[No. S110887. May 9, 2005.]

In re JAMES GREEBE REEVES on Habeas Corpus

## Counsel

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Laura Whitcomb Halgren, Steven T. Oetting, David Delgado-Rucci and Lynne G. McGinnis, Deputy Attorneys General, for Appellant Department of Corrections.

David K. Rankin, under appointment by the Supreme Court, and Suzanne Rothlisberger, under appointment by the Court of Appeal, for Respondent James Greebe Reeves.

## Opinion

**WERDEGAR, J.**—Penal Code section 2933[1] offers state prisoners who participate in qualifying work, training and educational programs the privilege of earning "worktime credit" (id., subd. (a)) against their sentences. Ordinarily, the maximum rate at which a prisoner may earn worktime credit is 50 percent, or one day's credit for each day's participation.[2] Other statutes make worktime credit unavailable, or available only at a reduced rate, to prisoners convicted of designated offenses. (E.g., §§ 2933.1 [violent offenses], 2933.2 [murder].) This case concerns section 2933.1, subdivision (a),[3] which provides that "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 [i.e., a violent offense] shall accrue no more than 15 percent of worktime credit, as defined in Section 2933."[4]

The question before us is whether section 2933.1(a) restricts petitioner's ability to earn worktime credit against a concurrent sentence for a nonviolent offense. Petitioner has completed a five-year term for the violent offense that made the section applicable and is now serving the remainder of a concurrent

---

[1] All further citations to statutes are to the Penal Code, except as noted.

[2] Prisoners assigned to conservation camps may earn two days' worktime credit for each day's service. (§ 2933.3.)

[3] Hereafter section 2933.1(a).

[4] Section 2933.1(a) uses the term "worktime credit" to refer to the type of postsentence credit created, and expressly given that name, by section 2933. This opinion uses the term only in that statutory sense. To avoid confusion, we note the term "worktime credit" is sometimes used in a nonstatutory sense to refer to presentence credit awarded for willingness to perform assigned labor (§ 4019, subd. (b)), in order to distinguish it from presentence credit awarded for compliance with rules and regulations (id., subd. (c)). (E.g., People v. Cooper (2002) 27 Cal.4th 38, 40 [115 Cal.Rptr.2d 219, 37 P.3d 403].) Both forms of presentence credit are also sometimes referred to as "conduct credit." (E.g., ibid.)

10-year term for a nonviolent offense. We hold that section 2933.1(a) limited to 15 percent the rate at which petitioner could earn worktime credit as long as he was serving the term for the violent offense, even though the concurrently punished nonviolent offense would not by itself have caused the section to apply; but once petitioner completed the term for the violent offense he became prospectively eligible to earn credit at a rate unrestricted by the section. We therefore reject both the People's harsher and petitioner's more lenient interpretations of the section.

## I. BACKGROUND

On March 18, 1999, following a jury trial, the Orange County Superior Court sentenced petitioner to 10 years in state prison for the offense of possessing a controlled substance for sale, plus enhancements.[5] In a separate proceeding on April 6, 1999, pursuant to a guilty plea, a different judge of the same court sentenced petitioner to five years for the offense of assault with a deadly weapon other than a firearm, plus an enhancement.[6] Because the assault caused great bodily injury, it triggered the 15 percent credit limitation of section 2933.1(a) as a "violent felony" described in section 667.5, subdivision (c). The judge at the second sentencing proceeding did not state that the two sentences would run consecutively; hence, the Penal Code made them concurrent by operation of law.[7] (§ 669, 2d par.)

Petitioner was committed to state prison in 1999. At that time, the Department of Corrections (Department) calculated his release date as October 19, 2006. The Department based this decision on its understanding that section 2933.1(a) applied fully to both of petitioner's sentences so that he would accrue only 15 percent worktime credit for the entire duration of his prison commitment, even after completing the shorter, five-year sentence for the violent felony. Petitioner challenged the Department's decision in a petition for habeas corpus. The superior court, reasoning that section 2933.1(a) had no effect on petitioner's sentence for the nonviolent offense,

---

[5] The 10-year sentence represents the middle term of two years for possession of a controlled substance for sale (Health & Saf. Code, § 11378; see § 18), two years for committing that felony for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), three years for having served three prior prison terms (§ 667.5, subd. (b)), and three years for having committed a prior drug-related offense (Health & Saf. Code, § 11370.2, subd. (b)).

[6] The five-year sentence represents the lower term of two years for assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)) plus three years for causing great bodily injury (§ 12022.7).

[7] The subsequently prepared minute order and abstract of judgment reflect the court's implicit decision to sentence concurrently.

granted the writ and ordered the Department to recalculate petitioner's release date. The Court of Appeal affirmed, and we granted review.

## II. DISCUSSION

■ Our role in construing section 2933.1(a), as with any statute, is to ascertain the Legislature's intent so as to effectuate the purpose of the law. We accomplish this task if possible by giving the words of the statute their usual, ordinary meanings. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168].) This case turns on the meaning of the phrase "any person who is convicted of a [violent] felony offense . . . ." (§ 2933.1(a).)[8]

As will appear, the effort to apply this seemingly plain language to the case at hand reveals ambiguities the Legislature apparently did not foresee.

The People argue that petitioner "is convicted" of a violent felony offense for purposes of calculating worktime credit because he served a term for a violent offense during his current prison commitment, even though he has completed that term and would be eligible for release, were it not for the time remaining on his longer concurrent sentence for a nonviolent offense. Petitioner, echoing the lower courts' conclusions, contends that section 2933.1(a) has never restricted his ability to earn worktime credit against the longer concurrent sentence because, for purposes of that sentence, he is *not* convicted of a violent felony offense. Other possible interpretations of the section also exist, as we shall explain. Accordingly, the conclusion that section 2933.1(a) is ambiguous, at least as applied to the facts of this case, seems

---

[8] Section 2933.1 provides in full:

"(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933.

"(b) The 15-percent limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law. However, nothing in subdivision (a) shall affect the requirement of any statute that the defendant serve a specified period of time prior to minimum parole eligibility, nor shall any offender otherwise statutorily ineligible for credit be eligible for credit pursuant to this section.

"(c) Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a).

"(d) This section shall only apply to offenses listed in subdivision (a) that are committed on or after the date on which this section becomes operative."

inescapable. Indeed, petitioner expressly argues the statute is ambiguous, and the Attorney General conceded the point during oral argument.

■ Because section 2933.1(a) is ambiguous, we may look beyond its language to other evidence that helps to elucidate the Legislature's purpose, such as the statute's background and history. (*People v. Canty, supra,* 32 Cal.4th 1266, 1277.) The purpose that motivated the section's enactment, however, is clear only in the broadest terms: The Legislature wished to protect the public by delaying the release of prisoners convicted of violent offenses. (Stats. 1994, ch. 713, § 2, p. 3448 [declaration of urgency].) The general observation that a law was intended to delay release does not, in the face of ambiguous statutory language, answer the specific, practical questions of how long and under what circumstances release is to be delayed. Neither does the legislative history reveal any specific consideration of the problem of applying credits to concurrent sentences. ■ Under these circumstances, lacking definitive guidance in the statute's language or history, "our aim [must be] to provide . . . a construction [of the statute] which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." (*In re Joyner* (1989) 48 Cal.3d 487, 495 [256 Cal.Rptr. 785, 769 P.2d 967].) This is the practical approach to identifying legislative intent that we have followed in other cases addressing unforeseen difficulties in the implementation of California's statutory credit system. (*Ibid.*; see also *People v. Buckhalter* (2001) 26 Cal.4th 20, 28–29 [108 Cal.Rptr.2d 625, 25 P.3d 1103]; *People v. Bruner* (1995) 9 Cal.4th 1178, 1194–1195 [40 Cal.Rptr.2d 534, 892 P.2d 1277].)[9]

■ In searching for a reasonable construction of section 2933.1(a), we may at the outset reject a construction that, while arguably consistent with the section's language, is almost certainly not what the Legislature intended. The phrase, "any person who is convicted of a [violent] felony offense" (§ 2933.1(a)), might conceivably refer simply to a point of historical fact. Read in this way, the statute would disqualify, for all time, any person who has ever been convicted of a violent offense from earning more than 15 percent worktime credit. Neither the People nor petitioner endorses this reading of the section. We may reasonably reject it because the Legislature typically uses different language when it intends to impose a continuing

---

[9] When a statute is capable of more than one construction, " '[w]e must . . . give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.' " (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876], quoting *Marshall M. v. Superior Court* (1999) 75 Cal.App.4th 48, 55 [88 Cal.Rptr.2d 891].)

disability based on criminal history. Credit restrictions, enhancements and alternative sentencing schemes based on criminal history usually employ the past perfect tense ("has been convicted" or "previously has been convicted") rather than the present tense ("is convicted"). (E.g., §§ 667, subds. (a)(1) & (b), 667.51, subd. (d), 667.6, subd. (a), 667.71, subd. (a), 2933.5, subd. (a)(1).) Similarly, section 2933.5 withholds all worktime credits from a "person who *is* convicted" and also "*previously has been* convicted two or more times" of a designated felony. (*Id.*, subd. (a)(1), italics added.) We have relied on this observation about the Legislature's practice to resolve other statutory ambiguities, as when we determined that a statute referred to current rather than past convictions in making any "person convicted of murder, rape or any other serious felony" (Welf. & Inst. Code, § 1732.5) ineligible for commitment to the Youth Authority. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008–1010 [239 Cal.Rptr. 656, 741 P.2d 154].)

We may also reasonably reject the parties' interpretations of section 2933.1(a). Both create unacceptable tension with the statutory language, and neither is entirely fair and reasonable.

As mentioned, the People argue that section 2933.1(a) restricts petitioner's ability to earn worktime credit against his concurrent term for the nonviolent offense even though he has completed his term for the violent offense that caused section 2933.1(a) to apply. The People reject petitioner's and the lower courts' view that the section applies on an offense-by-offense basis. In the People's view, section 2933.1(a) applies to offenders rather than to offenses, and applies to a designated offender's entire period of confinement, provided the offender at some point during that period serves time for a violent offense. An offender's time in prison, the People argue, must for purposes of credits be regarded as "a single, unitary period of confinement," regardless of "whether that period of confinement is based upon multiple convictions or separate crimes." Reading section 2933.1(a) in this way, petitioner's total time in state prison would be eight years and six months, which represents the longer, 10-year concurrent term for a nonviolent offense minus 15 percent worktime credit.

We agree with the People's interpretation of section 2933.1(a) in some respects but not in others. We may confidently assume that an offender serving a sentence that combines *consecutive* terms for violent and nonviolent offenses is subject to the credit restriction imposed by section 2933.1(a) for the entire sentence. Under the Determinate Sentencing Act (§ 1170 et seq.), multiple consecutive determinate terms must be combined into a single, "aggregate term of imprisonment for all [such] convictions" (§ 1170.1, subd. (a)) that merges all terms to be served consecutively and complies with

the rules for calculating aggregate terms (e.g., one-third the base term for subordinate terms and specific enhancements applicable to subordinate terms (*ibid.*)), whether or not the consecutive terms arose from the same or different proceedings (*ibid.*; see also § 669; Cal. Rules of Court, rule 4.452). To suggest that a prisoner serving an aggregate term serves the component terms and enhancements in any particular sequence would be a meaningless abstraction. For this reason, when an aggregate term includes time for a violent offense, at any point during that term the prisoner literally "is convicted of a [violent] felony offense" (§ 2933.1(a)) and actually is serving time for that offense. Accordingly, a restriction on credits applicable to "any person who is convicted of a [violent] felony offense" (*ibid.*) logically applies throughout the aggregate term.

■ The People's effort to apply the same logic to concurrent terms is not convincing. A court that decides to run terms *consecutively* must create a new, "aggregate term of imprisonment" (§ 1170.1, subd. (a)) into which all the consecutive terms merge, but no principle of California law merges *concurrent* terms into a single aggregate term. Section 1170.1, which articulates the statutory mandate and authority for creating aggregate consecutive terms, says nothing about concurrent terms. Furthermore, a later sentencing court may not change a prior sentencing court's discretionary decision to make a particular term concurrent rather than consecutive. (Cal. Rules of Court, rule 4.452(3).)[10] The determinate sentencing law, in short, does not support the People's argument that all of an inmate's overlapping terms necessarily constitute a single, unified term of confinement for purposes of worktime credit.

Neither do the other statutes on which the People rely support their argument. Section 667.5, subdivision (g), defines "prior separate prison term *for purposes of this section*" (italics added) as including both concurrent and consecutive terms. But the section has nothing to do with credits; its purpose is to avoid enhancing a sentence for a "prior separate prison term" (§ 667.5, subd. (a)) more than once for a single prior stay in prison. Section 2933, the statute authorizing worktime credits, begins by stating the Legislature's intent that persons convicted and sentenced under the Determinate Sentencing Act "serve the entire sentence imposed by the court, except for a reduction in the

---

[10] The Penal Code, by use of the plural form "terms," implicitly recognizes that a prisoner can have multiple terms that do not merge. For example, "[t]he Department of Corrections shall advise the court pronouncing the second or other subsequent judgment of the existence of all prior judgments against the defendant, the *terms* of imprisonment upon which have not been completely served." (§ 669, 3d par., italics added.) Moreover, when a court sentences without knowledge of existing terms, it may within 60 days thereafter "determine how the term of imprisonment upon the second or other subsequent judgment shall run with reference to the prior incompleted [*sic*] *term or terms* of imprisonment." (*Id.*, 2d par., italics added.)

time served" for performance in qualified work programs. (*Id.*, subd. (a).) But the section does not provide that separate, concurrent sentences merge for purposes of credits. Neither does section 2900, subdivision (a), which simply provides that "[t]he term of imprisonment fixed by the judgment . . . commences to run only upon the actual delivery of the defendant into the custody of the Department of Corrections . . . ."[11]

The People also attempt to derive their proposed rule that all of a prisoner's overlapping terms must, for purposes of credits, be viewed as a single, unitary period of confinement from the language of section 2933.1. The specific language on which the People rely, however, appears not in subdivision (a) but in subdivision (c), and it concerns not *postsentence* worktime credits under section 2933 but *presentence credits* under section 4019. Section 2933.1, subdivision (c),[12] provides that "the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail [or other local facility] following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of *the actual period of confinement* for any person specified in subdivision (a)." (Italics added.) Thus, a person who spends time in presentence (including pretrial) confinement and is eventually convicted of a violent offense may earn, as a credit against his prison sentence, no more than 15 percent of the actual time he spent in presentence confinement, regardless of the offenses for which he was charged. This was the holding of *People v. Ramos* (1996) 50 Cal.App.4th 810, 815–817 [58 Cal.Rptr.2d 24] (*Ramos*). All other published decisions addressing the same issue about presentence credits have followed *Ramos*. (*People v. Duran* (1998) 67 Cal.App.4th 267, 270 [78 Cal.Rptr.2d 884]; *People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1141 [66 Cal.Rptr.2d 77]; *People v. Palacios* (1997) 56 Cal.App.4th 252, 255–256 [65 Cal.Rptr.2d 318].)

---

[11] The dissent, relying on older decisions interpreting the specific language of sentencing schemes that have long since been repealed, unsuccessfully attempts to construct a nonstatutory general rule to the effect that all of a prisoner's terms merge for purposes of credits. (See dis. opn. of Chin, J., *post*, at pp. 783–785, citing *In re Cowen* (1946) 27 Cal.2d 637 [166 P.2d 279], *In re Albori* (1933) 218 Cal. 34 [21 P.2d 423], *Ex Parte Dalton* (1875) 49 Cal. 463.) None of the cited cases offers any assistance in interpreting the different language of section 2933.1(a) or the present Determinate Sentencing Act (§ 1170 et seq.). Neither can any guidance be found in more recent decisions using the term "aggregate sentence" in a nonstatutory, colloquial sense as including concurrent terms while not addressing the question before us. (See dis. opn. of Chin, J., *post*, at pp. 784–785, fn. 3, citing *People v. Williams* (2004) 34 Cal.4th 397, 401 [19 Cal.Rptr.3d 619, 98 P.3d 876], *People v. McFarland* (1989) 47 Cal.3d 798, 801 [254 Cal.Rptr. 331, 765 P.2d 493], *People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1236 [118 Cal.Rptr.2d 890], *People v. Cole* (1994) 23 Cal.App.4th 1672, 1674 [28 Cal.Rptr.2d 788], and *People v. Parrott* (1986) 179 Cal.App.3d 1119, 1122 [225 Cal.Rptr. 293].)

[12] Hereafter section 2933.1(c).

The People insist that *Ramos, supra,* 50 Cal.App.4th 810, disposes of the different issue before us. It does not. The defendant in *Ramos,* after a period of presentence confinement, was convicted of a variety of violent and nonviolent offenses and sentenced to a single, aggregate term of 22 years, which included among other things an eight-month consecutive term for a nonviolent offense. (*Id.,* at p. 814.) The defendant argued that section 2933.1(c) did not affect his ability to earn credit under section 4019 for presentence custody attributable to his nonviolent offenses. Assuming the correctness of that argument, the defendant further contended that he had accrued presentence credit at two different rates: the reduced rate of 15 percent against the portion of his presentence confinement attributable to the violent offense, and at a higher rate (see § 4019, subd. (f)) against the portion attributable to the nonviolent offense. (*Ramos,* at p. 817.) The court reasonably rejected these arguments because "the language of section 2933.1 [did] not support [Ramos's] position." (*Ramos,* at p. 817.) Section 2933.1, the court reasoned, "limits to 15 percent the maximum number of conduct credits[13] available to 'any person who is convicted of a felony offense listed in Section 667.5.' That is, by its terms, section 2933.1 applies to the offender not to the offense and so limits a violent felon's conduct credits irrespective of whether or not all his or her offenses come within section 667.5." (*Ramos, supra,* at p. 817, quoting § 2933.1(a).)

The *Ramos* court's statement that "section 2933.1 applies to the offender not to the offense" (*Ramos, supra,* 50 Cal.App.4th 810, 817) makes sense in the context in which the court spoke—that of presentence credits authorized by section 4019 and limited by section 2933.1(c). A period of presentence confinement is indivisibly attributable to all of the offenses with which the prisoner is charged and of which he is eventually convicted. The defendant's argument in *Ramos* would have required the court to parse such a single, unitary period of presentence confinement into hypothetical, overlapping terms eligible to earn credit at different rates. Such a result finds no support in the language of subdivision (c), which limits the credits a prisoner may earn against an "*actual period of confinement*" (§ 2933.1(c), italics added) following arrest and before sentencing. The People here, departing from the actual holding of *Ramos,* would read subdivision (c) as if it qualified *subdivision (a)* by defining all of a prisoner's postsentence time in state prison as a single "actual period of confinement" (§ 2933.1(c)) for purposes of postsentence worktime credit. Although subdivision (c) does refer to subdivision (a),[14] it does so "only to clarify the intended target population"

---

[13] That is, pretrial credits under section 4019. See page 768, footnote 4, *ante.*

[14] "Notwithstanding Section 4019 [which authorizes presentence credits] or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail [or other local facility] following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement *for any person specified in subdivision (a).*" (§ 2933.1(c), italics added.)

of subdivision (c). (*People v. Aguirre, supra*, 56 Cal.App.4th 1135, 1140.) In other words, subdivision (c) explains that its limitation on presentence credit takes effect only when a person who has served "an actual period of [presentence] confinement" (§ 2933.1(c)) becomes, by subsequent conviction of a violent offense in a proceeding to which the presentence custody is attributable, a "*person specified in subdivision (a)*" (§ 2933.1(c), italics added), namely, a "person who is convicted of a [violent] felony offense" (§ 2933.1(a)). Subdivision (c) says nothing at all about postsentence credit. Thus, to read subdivision (c) as limiting postsentence credits or qualifying subdivision (a), as the People here would read it, finds no support in the relevant statutory language.

The People attempt to find evidence of legislative intent supporting their position in a letter written by Assemblyman Richard Katz, who sponsored the bill that became section 2933.1 (Assem. Bill No. 2716 (1993–1994 Reg. Sess.)), to the Clerk of the Assembly and printed by unanimous consent in the Assembly Journal after both houses of the Legislature had passed the bill. But the letter itself is ambiguous. In it, the author states: "This letter is to clarify my intent, and that of the Legislature, in writing and enacting AB 2716 . . . to ensure that the maximum reduction [for worktime credits] . . . from a defendant's term of imprisonment imposed as a result of a violent felony . . . be fifteen percent. [¶] In enacting Penal Code section 2933.1, it is my intent and that of the Legislature to ensure that the maximum fifteen percent reduction apply to a defendant's entire term of imprisonment, so long as the defendant has been convicted of at least one violent felony . . . ." (Assemblyman Richard Katz, letter to Dotson Wilson, Chief Clerk of Assem., August 31, 1994, printed at 6 Assem. J. (1993–1994 Reg. Sess.) p. 9353.) The letter's first sentence, which refers to "*a defendant's term of imprisonment imposed as a result of a violent felony*" (*ibid.*, italics added), might be read as supporting petitioner's argument that section 2933.1(a) applies on an offense-by-offense basis. The letter's second sentence, which refers to an "*entire term*" (Assemblyman Richard Katz, letter to Dotson Wilson, *supra*, italics added), has two possible meanings: it could mean that the restriction applies to a prisoner's entire term for a violent offense, even if the term is an aggregate term (see § 1170.1, subd. (a)) combining consecutive terms for both violent and nonviolent offenses;[15] or, using the word "term" in a less

---

[15] Indeed, to say precisely this may well have been the author's intention. The concern had been expressed that the proposed legislation might require the Department to calculate separate rates of credit accrual for "violent offenses running consecutively to non-violent offenses"—something the Department's computer system was apparently unable to do and would therefore need to have been done manually. (Enrolled Bill Rep. on Assem. Bill No. 2716 (1993–1994 Reg. Sess.) Aug. 30, 1994, p. 3.) The same concern had been raised by the California Probation, Parole and Correctional Association while the original version of the bill that became section 2933.1 (Assem. Bill No. 113 (1993–1994 Reg. Sess.); see p. 780, fn. 18, *post*)

formally correct sense, it could refer to a prisoner's entire period of confinement in state prison, as the People here argue. The letter offers no basis for resolving the ambiguity; nor does it specifically address the question of whether the credit restriction proposed in the bill would apply to a separate, concurrent term for a nonviolent offense.

Of no more assistance in the present case is Governor Wilson's message to the Assembly upon signing the bill that became section 2933.1. The Governor wrote that the "bill would limit to 15% the credit inmates in state prison or local custody could earn to reduce their prison sentences for violent crimes." (Governor's message to Assem. on Assem. Bill No. 2716 (Sept. 21, 1994) 6 Assem. J. (1993–1994 Reg. Sess.) p. 9490.) This brief, general statement, which does not specifically address the treatment of concurrent terms, is consistent with both the People's and petitioner's interpretations of section 2933.1.

The People's reading of section 2933.1(a) creates tension with the statutory language in this way: Because petitioner has already served the term for the violent offense that caused the section to apply, the statement that he "is convicted of a [violent] felony offense" (*ibid.*) is true only as a matter of historical fact, i.e., he was once convicted of a violent offense. But we have already rejected, as contrary to the Legislature's probable intent, the argument that section 2933.1(a) treats a conviction for a violent offense as a continuing disability that restricts an offender's ability to earn worktime credits even after he has served his sentence for that offense. Except in this inapplicable sense, to say that petitioner at the present time "is convicted" (*ibid.*) of a violent offense is not correct. Today, his conviction for the violent offense gives the Department no claim to his physical custody; but for the time remaining on the separate, concurrent term for the nonviolent offense, he would be entitled to release. For the same reason, given the statute's ambiguity, the People's interpretation of section 2933.1(a) is not entirely fair (to petitioner or others in his situation) or reasonable. (*People v. Buckhalter, supra,* 26 Cal.4th 20, 28–29; *People v. Bruner, supra,* 9 Cal.4th 1178, 1194–1195; *In re Joyner, supra,* 48 Cal.3d 487, 495.)[16]

---

was pending in the Legislature. (Executive Director Susan Cohen, Cal. Probation, Parole and Correctional Assn., letter to Assemblyman Richard Katz, Apr. 15, 1993.)

We grant the People's request for judicial notice of the legislative history of section 2933.1.

[16] At oral argument, the People questioned whether our interpretation of section 2933.1(a) could readily be applied by the Department. We have no reason to doubt that it can be. The Department calculates a prisoner's earliest possible release date (EPRD), adjusted for worktime credit, by reference to a "controlling term." (Cal. Dept. of Corrections, Operations Manual (2000) § 73030.8.13.) Petitioner's shorter concurrent term for the violent offense properly controlled the rate at which he accrued worktime credit only until he completed that term. Thereafter, the longer concurrent term for the nonviolent offense—the term which alone gave

Petitioner's own interpretation of section 2933.1(a) also creates tension with the statutory language and is likewise neither fair nor reasonable. Following the lower courts, petitioner interprets section 2933.1(a) as having no effect whatsoever on his concurrent sentence for the nonviolent offense. As a result, petitioner continues, he has from the time he entered prison accrued credit at two different rates—15 percent on the term for the violent offense and 50 percent on the term for the nonviolent offense. Reading section 2933.1(a) in this way, petitioner's total time in custody would be five years, which represents the 10-year term for a nonviolent offense minus 50 percent credit. Petitioner concedes, as he must, that section 2933.1(a) applies to the term for the violent offense, but he denies the section has any practical impact on the duration of his commitment to state prison. This is because he has already served the credit-adjusted term for his violent felony offense (four years and three months, or five years minus 15 percent credit) and because the longer, credit-adjusted term for the nonviolent offense will, as he reads section 2933.1(a), keep him in prison a total of only five years—exactly the same time he would have served had he never been convicted of and sentenced for the violent offense.

Petitioner's interpretation of section 2933.1(a) would rob the section of any effect in his own case and thus entirely frustrate, if only in similar cases, the Legislature's purpose of delaying the release of violent offenders. Petitioner's interpretation thus cannot be described as fair (to the People) or reasonable. (*People v. Buckhalter, supra,* 26 Cal.4th 20, 28–29; *People v. Bruner, supra,* 9 Cal.4th 1178, 1194–1195; *In re Joyner, supra,* 48 Cal.3d 487, 495.) Petitioner's interpretation also creates tension with the statutory language in this way: During any period of time when petitioner is serving time in prison for *both* the violent offense *and* the nonviolent offense, petitioner most certainly *"is* convicted of a [violent] felony offense" (§ 2933.1(a), italics added) in every relevant sense. Thus, to permit him to accrue worktime credit

---

the Department a valid claim to petitioner's continuing physical custody—properly controlled his future ability to earn worktime credit. The Department's rules for calculating worktime credit already provide that a prisoner's "EPRD is projected each time . . . there is a change in credit earning status." (*Ibid.*) Under our interpretation of section 2933.1(a), the expiration of a term for a violent offense, leaving only a concurrent term for a nonviolent offense, constitutes a change in credit earning status.

The dissent, noting that the Department's current practice in awarding worktime credit differs from our conclusion about how credit should be awarded, questions on that basis whether the Department can readily apply our holding. (Dis. opn. of Chin, J., *post,* at pp. 794–796.) That the Department recognizes it must already track changes in credit earning status suggests it can apply our holding. In any event, the Department has no power to adopt a regulation or practice that conflicts with a final, authoritative judicial interpretation of section 2933.1(a).

during such a period of imprisonment at the rate of 50 percent for any purpose literally conflicts with the language of section 2933.1(a).

■ The arguments supporting petitioner's interpretation of section 2933.1(a) are not persuasive. Petitioner first argues that worktime credit is accrued on an offense-by-offense basis, at least when the offenses are punished with separate, concurrent terms. He bases this argument on the so-called strict causation rule, under which a prisoner "is not entitled to credit for *presentence* confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period." (*People v. Bruner, supra,* 9 Cal.4th 1178, 1191, italics added.) Thus, for example, a prisoner who serves a period of presentence custody on *Florida* charges is not entitled to credit against his subsequent prison sentence on *California* charges, even though a California hold was in effect throughout the period of presentence custody. (*In re Joyner, supra,* 48 Cal.3d 487, 492.) "Taking the logic that credits should be allocated to the term for which they accrued and applying it to the credits limitation situation here," petitioner argues, "results in a sensible general rule that the credits limitation applies to the term of imprisonment that is based on a qualifying offense." The argument lacks merit. The strict causation rule has no recognized application outside the context of presentence credits.

■ Petitioner next argues that the rule of lenity compels us to adopt his interpretation of section 2933.1(a). We disagree. "[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." (*People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1].) As we have explained, petitioner's interpretation of section 2933.1(a) would require us literally to violate the statute's command that "any person who is convicted of a [violent] felony offense . . . shall accrue no more than 15 percent of worktime credit" (*ibid.*), at least during the period of custody when petitioner is actually convicted of and serving a term for a violent offense. Moreover, as we have also explained, petitioner's interpretation of the section would leave the section without any effect on his own sentence, thus frustrating the Legislature's goal of ensuring that violent felons serve a great portion of their sentences.

■ In any event, resort to the rule of lenity is unnecessary. An interpretation of section 2933.1(a) exists that is faithful to its language and to what we know of the Legislature's purpose, produces fair and reasonable results, and can be readily understood and applied. Lacking definitive guidance in the language or history of the statute, our aim must be to identify such an interpretation. (E.g., *In re Joyner, supra,* 48 Cal.3d 487, 495.) As mentioned

at the outset, we interpret the section as follows: Section 2933.1(a) limits to 15 percent the rate at which a prisoner convicted of and serving time for a violent offense may earn worktime credit, regardless of any other offenses for which such a prisoner is simultaneously serving a sentence.[17] On the other hand, section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense; such a prisoner may earn credit at a rate unaffected by the section.[18]

■■■ Our interpretation is more faithful to the language of section 2933.1(a) than is either the People's or petitioner's interpretation. Unlike the People's interpretation, our interpretation does not require us to treat a person who is no longer subject to imprisonment for a violent offense as a person who "is convicted" (§ 2933.1(a)) of such an offense. Unlike petitioner's interpretation, our interpretation does not require us to treat a person who is currently serving time for a violent offense as a person who is *not* convicted of such an offense. Our interpretation is also faithful to what we know of the Legislature's purpose because it effectively limits the rate at which petitioner and others in his situation can earn worktime credit while serving sentences for violent offenses. Under our interpretation, petitioner will accrue credit at the rate of 15 percent against his first five years in prison and at the rate of 50 percent for his second five years. He will thus serve a total of six years and nine months, which represents five years minus 15 percent credit, plus five

---

[17] Unless, of course, one of those other offenses more severely restricts the prisoner's ability to earn worktime credit. (E.g., § 2933.2, subd. (a) [eliminating worktime credit altogether for persons convicted of murder].)

[18] The dissent argues that if the Legislature in passing section 2933.1(a) had "wanted to limit the statute's application as the majority now does, it knew how to do so expressly." (Dis. opn. of Chin, J., *post*, at p. 786, fn. 4.) As evidence, the dissent offers the language of Assembly Bill No. 2306 (1991–1992 Reg. Sess.) (as amended Apr. 21, 1992), which would have provided that a defendant convicted of a specified offense "shall accrue no more than 15 percent worktime credit against his or her term of imprisonment *for that offense* . . . ." (*Id.*, § 1, italics added; see dis. opn. of Chin, J., *post*, at p. 786, fn. 4.) In fact, the italicized language would not have codified our interpretation of section 2933.1(a); it would have codified the interpretation of *petitioner*, who argues that section 2933.1(a) applies on an offense-by-offense basis. (See *ante*, at pp. 770, 778 et seq.) Rejecting petitioner's argument, we interpret section 2933.1(a) as applying to a prisoner's *entire* sentence, so long as the prisoner is serving time for a violent offense. (See *ante*, at p. 779 et seq.)

Furthermore, the bill to which the dissent refers was never enacted; nor did it become section 2933.1 by subsequent amendment. Instead, the bill died in committee in an earlier session of the Legislature and never came to a vote on the floor. (6 Assem. J. (1991–1992 Reg. Sess.) p. 10419.) Section 2933.1, as enacted and codified, was introduced as Assembly Bill No. 113 during the 1993–1994 Regular Session and was, later in the same session, redesignated and enacted as Assembly Bill No. 2716. To attempt to infer a subsequent Legislature's collective knowledge and intent from language that an earlier and differently composed Legislature, acting as a whole, neither adopted nor rejected is irrational.

years minus 50 percent credit.[19] Our interpretation is fair and reasonable both to the People, because it imposes a real restriction on a violent offender's ability to earn worktime credits, and to petitioner, because the restriction ends when the term for the violent offense has been served.[20] Of course, our interpretation of section 2933.1 leaves the Legislature free to amend the section if and as it chooses.

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with the views set forth herein.

George, C. J., Kennard, J., and Moreno, J., concurred.

**CHIN, J.,** Dissenting.—Throughout this proceeding, the parties have offered two conflicting constructions of Penal Code section 2933.1, subdivision (a) (hereafter section 2933.1(a)).[1] Petitioner argues that the 15 percent sentence credit limit under that statute applies only to the sentence he received for his conviction of assault with a deadly weapon—which qualifies under section 667.5, subdivision (c)(8), as a violent felony because he inflicted great bodily injury on his victim—and does not apply to the sentence he received for possession of a controlled substance, which does not qualify as a violent felony. The People, on the other hand, argue that the 15 percent credit limit

---

[19] The proposed credit-adjusted term of six years and nine months is shorter than the term proposed by the People (eight years and six months) and longer than the term proposed by petitioner (five years).

[20] The dissent erroneously asserts that, under our interpretation, petitioner will serve less time in prison "*because* [he] committed a nonviolent felony *in addition to* the violent felony," and that our interpretation of section 2933.1 is thus "unfair to the People and absurd." (Dis. opn. of Chin, J., *post*, at p. 793.) What the dissent apparently means is that section 2933.1(a) does not restrict petitioner's ability to earn credits as much as it theoretically might, because petitioner's three one-year enhancements for having served prior prison terms are attached to the sentence for the nonviolent felony instead of to the sentence for the violent felony. This unusual circumstance, however, is the result not of our holding in this case but of the second sentencing court's discretionary decision not to run the new sentence for the violent felony consecutively to the existing sentence for the nonviolent felony. (See § 669.) Had the court done so, the longer base term for the violent felony (two, three or four years; see § 245, subd. (a)(1)) would necessarily have become the principal term (§ 1170.1, subd. (a)), the shorter base term for the nonviolent felony (18 months, or two or three years; see § 18) would necessarily have become the subordinate term (§ 1170.1, subd. (a)), the prior prison term enhancements would necessarily have attached to the principal term (*ibid.*), and the 15 percent credit limitation of section 2933.1(a) under our holding would have applied to petitioner's entire consecutive sentence.

[1] All further unlabeled statutory references are to the Penal Code.

fully applies to both sentences. I agree with the People because, as I demonstrate below, their construction is consistent with the statutory language, the legislative history, and 130 years of California case law interpreting California sentence credit statutes under both determinate and indeterminate sentencing schemes.

The majority rejects both constructions and, conjuring up its own, holds that section 2933.1(a)'s credit limit applied to the sentence for petitioner's drug possession conviction only "as long as [petitioner] was serving the term for the violent offense," and became inapplicable "once [he] completed the term for the violent offense." (Maj. opn., *ante*, at p. 769.) However, the majority's interpretation is inconsistent with the language of the statute viewed in its statutory context and in light of our case law. Instead, the majority's interpretation is based on language that the Legislature could have adopted, but chose not to. The majority's interpretation is also inconsistent with the relevant legislative history. Finally, and ironically, although the majority asserts that its interpretation is "fair and reasonable" (maj. opn., *ante*, at p. 779), the results produced by its interpretation are neither. Here, for example, under the majority's interpretation, petitioner will actually serve less total time in prison *because* he committed a second crime—the drug possession offense—than he would have served had he committed only one crime—the assault. Surely, the Legislature did not intend to grant defendants a windfall for committing additional crimes. For these reasons, I dissent.

## I. *Background Facts*

The procedural history of this action is important in understanding the consequences of the majority's holding. On January 19, 1999, in case No. 98HF0516, defendant was convicted by guilty plea of assault with a deadly weapon other than a firearm. At the same time, he admitted one enhancement under section 12022.7 for inflicting great bodily injury and four enhancements under section 667.5, subdivision (b), for serving four separate prior prison terms for felonies. Sentencing in the case was set for March 12, 1999.

Sentencing did not occur as scheduled on March 12. Instead, petitioner went to trial in case No. 98WF0354, which charged the drug possession offense, one enhancement under section 186.22 for committing the offense for the benefit of a criminal street gang, one enhancement under Health and Safety Code section 11370.2 for a prior drug-related offense, and three enhancements under Penal Code section 667.5, subdivision (b), for serving three separate prior prison terms for felonies. On March 18, 1999, petitioner

was convicted of the drug possession offense and the enhancement allegations were found true. On the same date, the court imposed a 10-year prison sentence in the drug possession case, which included two years for the substantive offense, two years for the gang enhancement, three years for the prior drug-related offense, and three years under section 667.5, subdivision (b), for the three prior prison terms petitioner had served.

Three weeks later, on April 6, 1999, the court sentenced petitioner in the assault case. It imposed a five-year prison sentence, which included two years for the assault conviction and three years for inflicting great bodily injury. Although, as noted above, petitioner had earlier admitted the four enhancements alleged under section 667.5, subdivision (b), for serving prior prison terms, the court struck three of these enhancements because enhancements for the same prior prison terms had been imposed three weeks earlier in the drug possession case. The court struck the remaining enhancement at the People's request in the interests of justice. The minute order from the sentencing hearing, as well as the abstract of judgment, specified that the sentence was concurrent with the sentence in the drug possession case.

## II. *The Statutory Language Supports the People's Construction, Not the Majority's*

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We [must] begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we [must] look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we [should] construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

Contrary to what the majority opinion might lead one to believe, applying these principles here is relatively simple. Section 2933.1(a) provides that "[n]otwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." I agree with the majority that this provision applied to petitioner's sentences in both cases here because of his assault conviction, and the question becomes, "for how

long." The answer is found in section 2933, which section 2933.1(a) specifically references. Section 2933, subdivision (a), expresses the Legislature's general "intent" that a prisoner "sentenced to the state prison under Section 1170 serve *the entire sentence* imposed by the court," and then qualifies that intent by providing for "worktime credit reductions from [the prisoner's] *term of confinement*." (Italics added.) Here, petitioner's term of confinement—i.e., the period of time he is to spend in prison—is 10 years, which is the longer of the concurrent sentences imposed. Given that section 2933.1(a) limits accrual of "worktime credit, as defined in Section 2933," and that section 2933, subdivision (a), refers to a defendant's "entire sentence" and his or her "term of confinement," it is reasonable to conclude that the Legislature intended section 2933.1(a)'s limitation to apply to petitioner's entire 10-year term of confinement.

This conclusion is consistent with 130 years of California case law involving interpretation of our sentence credit statutes. In *Ex Parte Dalton* (1875) 49 Cal. 463, 465, we construed a statute providing that work and good behavior credits "shall be deducted from 'the entire term of penal servitude to which [the prisoner] has been sentenced.' " We held that the phrase " 'entire term of penal servitude' " referred to the total prison time collectively imposed for all of the prisoner's current convictions, not to the separate periods imposed for each conviction. (*Ibid.*) We explained that each separate period "is but a part of the entire term" and that "[w]hatever deduction is to be made for good behavior [and work], is not to be taken from the beginning or the middle, but from the end of the entire term." (*Ibid.*) When we decided *Dalton* in 1875, California had a determinate sentencing scheme similar to the determinate sentencing scheme in effect today.[2] However, almost 60 years later, when the indeterminate sentencing law was in effect, we followed *Dalton* and reached the same conclusion in interpreting a statute that, using the same phrase now found in section 2933, provided for credit reductions from the prisoner's " 'term of confinement.' " (*In re Albori* (1933) 218 Cal. 34, 36 [21 P.2d 423] (*Albori*).) This phrase, we explained, "conveys the thought of a 'continuous period of imprisonment' and . . . should be construed to have the same effect . . . as the expression 'entire term of penal servitude.' " (*Id.* at p. 37.)

We later followed *Albori* in *In re Cowen* (1946) 27 Cal.2d 637 [166 P.2d 279] (*Cowen*). There, defendant was convicted in one action of attempted robbery, and was convicted in a separate action of rape and robbery. (*Id.* at

---

[2] California's indeterminate sentencing law was adopted in 1917. (Stats. 1917, ch. 527, p. 665.) "Prior to 1917, California had a 'definite' sentencing system." (Note, *Senate Bill 42 and the Myth of Shortened Sentences for California Offenders: The Effects of the Uniform Determinate Sentencing Act* (1977) 14 San Diego L.Rev. 1176, 1178.)

p. 639.) He received concurrent sentences for the rape and robbery convictions, and a consecutive sentence for the attempted robbery conviction. (*Ibid.*) Following *Albori*, we held that the phrase "term of confinement" in the then operative credit statute referred to "the total term of confinement" imposed for all current convictions, rather than "the separate terms" imposed for separate convictions. (*Cowen*, at p. 643.) We also held that "for the purposes of allowing and forfeiting credits," a prisoner with concurrent sentences for two convictions and a consecutive sentence for another "is undergoing a single, aggregate term of confinement . . . ." (*Id.* at p. 647.) Finally, we explained that whether a prisoner is serving consecutive sentences, or is serving "concurrent sentences for crimes committed on separate occasions, perhaps in separate counties, the sentences are . . . 'coalesced into one.'" (*Ibid.*)

These decisions strongly support the conclusion that section 2933.1(a)'s credit limit applies throughout petitioner's entire period of confinement. "The Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.] Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction. [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].) Thus, in using the phrase "term of confinement" in section 2933, subdivision (a), and in expressly incorporating that phrase into section 2933.1(a), "the Legislature undoubtedly intended to convey the same meaning" we gave to that identical phrase in construing the sentence credit statutes at issue in *Albori* and *Cowen*.[3] (*People v. Harrison*, *supra*, 48 Cal.3d at p. 329.)

---

[3] Given these decisions, the majority is simply incorrect in stating that "no principle of California law merges *concurrent* terms into a single aggregate term." (Maj. opn., *ante*, at p. 773.) As I have noted, *Dalton* was decided in 1875, when California had a determinate sentencing scheme, and was followed in *Albori*, when California had an indeterminate sentencing scheme. Nothing in the determinate sentencing law (DSL) in effect since 1976 abrogates these decisions or is inconsistent with their analyses. Section 1170.1, subdivision (a), which the majority discusses (maj. opn., *ante*, at p. 773), merely specifies the formula for calculating "the aggregate term" for multiple convictions when consecutive sentences are imposed. It does not establish, or even suggest, that the collective term for concurrently sentenced felony convictions is not "a single, unified term of confinement for purposes of worktime credit." (Maj. opn., *ante*, at p. 773.) On the contrary, since adoption of the DSL, both this court and our Courts of Appeal have continued to refer to the combined sentence for concurrent terms as an "aggregate" term or sentence. (E.g., *People v. Williams* (2004) 34 Cal.4th 397, 401 [19 Cal.Rptr.3d 619, 98 P.3d 876]; *People v. McFarland* (1989) 47 Cal.3d 798, 801 [254 Cal.Rptr. 331, 765 P.2d 493]; *People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1236 [118 Cal.Rptr.2d 890]; *People v. Cole* (1994) 23 Cal.App.4th 1672, 1674 [28 Cal.Rptr.2d 788]; *People v. Parrott* (1986) 179 Cal.App.3d 1119, 1122 [225 Cal.Rptr. 293].) The majority offers no persuasive reason for disregarding any of the decisions I have cited or discussed (see maj. opn., *ante*, at p. 774, fn. 11), and fails to cite a single decision supporting its contrary

Further supporting this conclusion is the specific language of two other sentence credit statutes that appear in the same article as section 2933.1. Section 2933.6, subdivision (a), provides that "a person who is placed in a Security Housing Unit or an Administrative Segregation Unit for [specified] misconduct . . . is ineligible to earn work credits or good behavior credits *during the time* [the person] *is in* the Security Housing Unit or the Administrative Segregation Unit *for that misconduct*." (Italics added.) Section 2934 provides that prisoners subject to section 2931 who waive their right to sentence credits under that statute "shall retain only that portion of . . . credits . . . *attributable to the portion of the sentence served by the prisoner* prior to the effective date of the waiver." (Italics added.) The Legislature passed section 2933.6 in 1992 (Stats. 1992, ch. 1175, § 1, p. 5514), and it passed section 2934 in 1982 (Stats. 1982, ch. 1234, § 5, p. 4552). Thus, in 1994, when it passed section 2933.1 and placed it in the same article as sections 2933.6 and 2934, the Legislature clearly knew how to, but did not, adopt language that would have made section 2933.1(a)'s credit limit applicable only "during the time" (§ 2933.6) a prisoner is confined for the violent felony conviction or during that portion of a prisoner's current prison confinement "attributable to" (§ 2934) the violent felony conviction.[4] As we recently explained in construing the same article of the Penal Code at issue here, " '[w]here a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent.' [Citation.]" (*In re Young* (2004) 32 Cal.4th 900, 907 [12 Cal.Rptr.3d 48, 87 P.3d 797].) Thus, that the Legislature omitted from section 2933.1(a) the type of limiting language found in sections 2933.6 and 2934 is additional evidence the Legislature did *not* intend to impose the limit on section 2933.1(a) the majority now writes into that statute.

Also supporting the People's construction is the Court of Appeal's decision in *People v. Ramos* (1996) 50 Cal.App.4th 810 [8 Cal.Rptr.2d 24] (*Ramos*), which the majority generally endorses. (Maj. opn., *ante*, at pp. 775–776.)

---

view. The majority also errs in asserting that "when an aggregate term" of a consecutively sentenced prisoner "includes time for a violent offense, at any point during that term the prisoner . . . actually is serving time for that offense." (Maj. opn., *ante*, at p. 773.) Under the majority's view, a consecutively sentenced defendant may, and often will, serve more time for a given offense than the statutory maximum for that offense. Again, the majority cites no authority for its assertion.

[4] As proposed during the 1991–1992 Regular Session of the Legislature, section 2933.1(a) provided that a defendant convicted of a specified offense could earn no more than 15 percent worktime credit against his sentence "for that offense." (Assem. Bill No. 2306 (1991–1992 Reg. Sess.) as amended Apr. 21, 1992, § 1.) Although this language would have imposed a somewhat different limitation than the one the majority now judicially writes into the statute, it is additional evidence that had the Legislature, when it passed section 2933.1 at the next Regular Session, wanted to limit the statute's application as the majority now does, it knew how to do so expressly.

*Ramos* construed subdivision (c) of section 2933.1, which states: "the maximum credit that may be earned against a period of confinement in . . . a county jail [or other local facility] . . . following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)." In *Ramos*, the defendant, who was ultimately sentenced to consecutive sentences for both violent and nonviolent felonies, argued that section 2933.1(c), did not limit accrual of credit for presentence confinement as to his nonviolent felony conviction. (*Ramos*, *supra*, 50 Cal.App.4th at p. 817.) In rejecting this argument, the court reasoned: "[T]he language of section 2933.1 does not support [the defendant's] position. The statute applies '[n]otwithstanding Section 4019 or any other provision of the law' and limits to 15 percent the maximum number of conduct credits available to 'any person who is convicted of a felony offense listed in Section 667.5.' That is, by its terms, section 2933.1 *applies to the offender not to the offense* and so limits a violent felon's conduct credits *irrespective of whether or not all his or her offenses come within section 667.5.* The Legislature could have confined the 15 percent rule to the defendant's violent felonies if that had been its intention. (Cf. § 2900.5, subd. (b), limiting presentence credits to the custody 'attributable to proceedings related to the same conduct for which the defendant has been convicted.')" (*Ramos*, *supra*, 50 Cal.App.4th at p. 817, italics added.)

The majority's attempt to distinguish *Ramos* is unpersuasive. The majority finds that the *Ramos* court "reasonably rejected" the defendant's position in that case based on " 'the language of section 2933.1' " (maj. opn., *ante*, at p. 775), but asserts that the court's statement "that 'section 2933.1 applies to the offender not to the offense' [citation] makes sense [only] in the context" there at issue: "presentence credits." (Maj. opn., *ante*, at p. 775.) However, the majority's analysis ignores the fact that the statement in question—that "section 2933.1 applies to the offender not to the offense" (*Ramos*, *supra*, 50 Cal.App.4th at p. 817)—was based on the language of subdivision *(a)* of section 2933.1—"any person who is convicted of a [violent] felony"—which is the very provision at issue here. The majority's analysis also overlooks the fact that the *Ramos* court's observation about the Legislature's ability to write a more limited statute is equally applicable here; as explained above, the Legislature knew how to, but did not, adopt language making section 2933.1(a)'s accrual limit applicable only "during the time" (§ 2933.6) a prisoner is confined for the violent felony conviction or during that portion of a prisoner's current prison confinement "attributable to" (§ 2934) the violent felony conviction. This omission becomes especially

significant given the majority's interpretation of section 2933.1, subdivision (c); if, as the majority correctly concludes, the credit limit of that subdivision applies to the entire period of presentence confinement "regardless of the offenses . . . charged" (maj. opn., *ante*, at p. 774), then surely the Legislature, had it intended subdivision (a) to operate differently with respect to postconviction confinement, would have adopted language expressly so providing. That it did not do so supports the conclusion that the Legislature intended the two subdivisions to operate in the same manner. Thus, the language of section 2933.1(a), viewed in the context of the rest of the statute, the other statutes expressly incorporated into section 2933.1(a), the other statutes in the same article as section 2933.1(a), and our case law for 130 years, clearly supports the People's construction of the statute.

Ignoring the statutory context and our prior decisions, the majority rejects the People's construction because it purportedly "creates tension with the statutory language" of section 2933.1(a). (Maj. opn., *ante*, at p. 777.) In reaching this conclusion, the majority first asserts that a prisoner who has "served the term for the violent offense . . . 'is convicted of a [violent] felony offense' [citation]" within the meaning of the statute "only" in the following "sense": "as a matter of historical fact." (*Ibid.*) The majority next asserts that this "sense" is "inapplicable" given the majority's "reject[ion]" earlier in its opinion of an interpretation that "treats a conviction for a violent offense as a continuing disability that restricts an offender's ability to earn worktime credits even after he has served his sentence for that offense." (*Ibid.*) According to the majority, the tension exists because, "[e]xcept in this inapplicable sense, to say that petitioner at the present time 'is convicted' [citation] of a violent offense is not correct." (*Ibid.*)

The majority's analysis is flawed in several respects. First, the interpretation that the majority rejects at the beginning of its opinion is not, as the majority later asserts, that a conviction for a violent offense "[is] a continuing disability that restricts an offender's ability to earn worktime credits even *after he has served his sentence for that offense*." (Maj. opn., *ante*, at p. 777, italics added.) Had that been the interpretation the majority earlier rejected, the People's construction would not merely create tension with the statutory language, it would be in direct conflict with that language. Instead, as a careful reading of the majority opinion discloses, the earlier rejected interpretation is that a violent felony conviction makes section 2933.1(a)'s credit limit applicable "for all time" and that the statute establishes "a continuing disability *based on criminal history*." (Maj. opn., *ante*, at pp. 771–772, italics added.) Second, the People's construction does *not* create tension with the statutory language, as actually construed earlier in the majority's opinion,

because contrary to the majority's assertion, it is not true that a prisoner who has "served the term for the violent offense . . . 'is convicted of a [violent] felony offense' [citation]" within the meaning of the statute "only" in one "sense": "as a matter of historical fact." (Maj. opn., *ante*, at p. 777.) As I have demonstrated, even after a prisoner has "served the term" (*ibid.*) for a qualifying violent offense, he or she " 'is convicted of' " a violent felony offense (§ 2933.1, subd. (a)) in another sense: with regard to his or her current "term of confinement" as that phrase, which is incorporated by reference into section 2933.1(a), is used in section 2933. Understood in this sense, the statutory language is perfectly consistent with both the People's construction of the statute and the majority's holding that section 2933.1(a) is not applicable "for all time . . . based on criminal history." (Maj. opn., *ante*, at pp.771–772.) Thus, contrary to the majority's assertion, there is no tension between the statutory language and the People's construction.

The majority's assertion that its construction is "faithful to the [statute's] language" (maj. opn., *ante*, at p. 780) is also incorrect. In making this assertion, the majority explains that its interpretation does not treat a prisoner "who is no longer subject to imprisonment for a violent offense as a person who 'is convicted' (§ 2933.1(a)) of such an offense." (*Ibid.*) However, the statute does not state that its credit limit applies only while the prisoner is "subject to imprisonment for a violent offense." Nor does it state, as the majority elsewhere suggests, that the credit limit applies only while a person convicted of a violent offense "actually is serving time for that offense." (Maj. opn., *ante*, at p. 773.) As I have already explained, when it passed section 2933.1, the Legislature clearly knew how to adopt language conveying this limitation in scope, but chose not to. By writing this limiting language into the statute, the majority exceeds our proper role as a court in construing statutes, which "is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted. . . .*" (Code Civ. Proc., § 1858, italics added; see also *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557] ["insert[ing]" additional language into a statute "violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes"].)[5] By contrast, as I have demonstrated, the People's construction is faithful to the statutory language read in context and as it has been construed for 130 years.

---

[5] "A different set of considerations and limitations governs the reformation of statutes to preserve their constitutionality. [Citation.]" (*People v. Garcia* (1999) 21 Cal.4th 1, 15, fn. 9 [87 Cal.Rptr.2d 114, 980 P.2d 829].)

III. *The Legislative History Supports the People's Construction, Not the Majority's*

To the extent the statutory language, viewed in the context of the statutory framework and our relevant decisions, is ambiguous, the legislative history supports the People's construction.

At the outset, it is noteworthy that the majority cites nothing in the legislative history that supports its construction. For good reason: there is nothing. Nothing in the legislative history suggests that the Legislature intended to establish the two-tiered credit system the majority adopts. Nor does anything suggest that the Legislature intended to establish different credit rules depending on whether convictions are sentenced concurrently or consecutively. Yet, this is the effect of the majority's conclusion that section 2933.1(a)'s credit limit would have applied to petitioner's entire term of confinement had he been sentenced consecutively rather than concurrently. (Maj. opn., *ante*, at pp. 772–773.)

On the other hand, in several respects, the legislative history undermines the majority's analysis and supports the People's construction. First, it confirms the People's view, which was adopted in *Ramos* based solely on the statutory language of section 2933.1(a), that the Legislature intended section 2933.1 to apply "to the offender not to the offense." (*Ramos*, *supra*, 50 Cal.App.4th at p. 817.) In a statement of urgency enacted with the statute, the Legislature declared that the statute's purpose is "to protect the public from dangerous . . . *offenders* who otherwise would be released." (Stats. 1994, ch. 713, § 2, p. 3448, italics added.) Similarly, the Senate Rules Committee's third reading analysis of the bill containing section 2933.1 explained that the statute's purpose is to prevent "violent and sexual *offenders* . . . from receiving more than 15% worktime credit." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2716 (1993–1994 Reg. Sess.) as amended July 6, 1994, p. 3, italics added.) Another legislative analysis explained: "The bill's intent is for those persons committing certain serious crimes for the first or second time to serve as much as possible their full-term sentence. This bill would limit the maximum work-time credit earned, not to exceed 15% of the actual period of confinement. [¶] . . . [S]erious felony *offenders* will get their 'true punishment' by serving the most of their actual sentence." (Cal. Youth and Adult Correctional Agency, analysis of Assem. Bill No. 113 (1993–1994 Reg. Sess.) as amended Jan. 31, 1994, p. 2, italics added.)[6] These statements demonstrate the Legislature's intent

---

[6] Section 2933.1, as it was enacted in 1994, was initially proposed in identical language in the January 31, 1994, version of Assembly Bill No. 113 (1993–1994 Reg. Sess.). The proposed statute was later inserted in Assembly Bill No. 2716 (1993–1994 Reg. Sess.). (See *In re Carr* (1998) 65 Cal.App.4th 1525, 1532–1533 [77 Cal.Rptr.2d 500].) The analysis of the Youth and

that section 2933.1 apply "to the offender not to the offense" (*Ramos, supra,* 50 Cal.App.4th at p. 817) with respect to *both* presentence *and* postconviction confinement, not, as the majority asserts without basis, only with respect to the former. (Maj. opn., *ante,* at pp. 775–776.)

Second, the legislative history confirms that the Legislature intended section 2933.1(a) to apply precisely as the People argue it applies: to petitioner's entire term of confinement. After the Legislature passed the statute but before it was enrolled and sent to the Governor for signature, the Assembly, on "unanimous consent," printed a "statement of legislative intent . . . in the [Assembly] Journal" regarding the statute. (6 Assem. J. (1993–1994 Reg. Sess.) p. 9353.) The statement of intent, which took the form of a letter to the Chief Clerk of the Assembly from the statute's author, Assembly Member Richard Katz, declared: "In enacting Penal Code section 2933.1, it is my intent and *that of the Legislature* to ensure that the maximum fifteen percent reduction *apply to a defendant's entire term of imprisonment, so long as the defendant has been convicted of at least one violent felony . . . .*" (6 Assem. J. (1993–1994 Reg. Sess.) p. 9353, italics added.) This statement of intent directly confirms what is evident from the rest of the legislative history and the language of the statute viewed in its statutory context and in light of our case law: the Legislature intended and understood that "so long as the defendant has been convicted of at least one violent felony," the 15 percent credit limit of section 2933.1(a) would be "appl[ied] to a defendant's entire term of imprisonment." (6 Assem. J. (1993–1994 Reg. Sess.) p. 9353.) Here, that entire term of imprisonment includes petitioner's confinement for the drug possession conviction.

Unlike the majority, I do not find this statement of intent to be "ambiguous." (Maj. opn., *ante,* at p. 776.) The majority concedes that the statement "could refer to a prisoner's entire period of confinement in state prison, as the People here argue." (Maj. opn., *ante,* at p. 777.) However, the majority speculates, the statement also "could" be referring merely to "an aggregate term" under section 1170.1, subdivision (a), that "combin[es] consecutive terms for both violent and nonviolent offenses." (Maj. opn., *ante,* at p. 776.) The majority's speculation regarding the latter meaning is highly implausible, given that the statement of intent does not refer to section 1170.1, to the concept of an aggregate term, or to consecutive sentences. Nothing in the statement of intent even suggests that the Legislature intended to distinguish between consecutive and concurrent terms with respect to the statute's operation, or that it wanted the statute's credit limit "to apply to a defendant's entire term of imprisonment" (6 Assem. J. (1993–1994 Reg. Sess.) p. 9353) only if that entire term resulted from consecutive sentences.

---

Adult Correctional Agency that I have cited above was contained in the files of the Assembly Republican Caucus.

Indeed, the conclusion that the Legislature did *not* have this intent is consistent with a fact stressed by the majority: the statement of intent does not "specifically address" the statute's application "to a separate, concurrent term for a nonviolent offense." (Maj. opn., *ante*, at p. 777.) The statement of intent does not specifically address *either* concurrent or consecutive sentences because the Legislature did not intend to distinguish between the two. Thus, in my view, the majority is straining to find ambiguity where no real ambiguity exists. In any event, even were the majority correct that some ambiguity exists, the People's interpretation is far more plausible than the majority's.[7]

In short, the legislative history, like the statutory language, supports the People's construction.

---

[7] In speculating that the printed statement of intent was referring only to consecutive sentences, the majority primarily relies on a statutory analysis prepared by the California Department of Corrections (CDC). (Maj. opn., *ante*, at p. 776, fn. 15.) However, the cited analysis was completed and submitted on August 30, 1994, *after* the relevant language of the printed statement of intent was proposed on August 29, 1994. (See Gregory Totten, Exec. Director of Cal. Dist. Attys. Assn., letter to Kathy Van Osten, Aug. 29, 1994, p. 1.) Moreover, the cited analysis was not submitted to the Legislature, but was sent to the Governor as an enrolled bill report analyzing the already passed bill and recommending that he sign it. (Cal. Youth and Adult Correctional Agency, Cal. Dept. of Corrections, Enrolled Bill Rep. on Assem. Bill No. 2716 (1993–1994 Reg. Sess.) Aug. 30, 1994, p. 3.) For these reasons, it is doubtful that the statement of intent was addressing the concern raised in the enrolled bill report the majority cites. The majority errs in asserting that concerns about the statute's application specifically to consecutively sentenced defendants were raised earlier by the California Probation, Parole and Correctional Association. (Maj. opn., *ante*, at p. 776, fn. 15.) The April 1993 letter the majority cites for its assertion (*ibid.*) made no reference to consecutively sentenced defendants or to any difficulty in applying the statute specifically to such defendants. Rather, it cryptically complained that the statute would require "probation officers . . . to *calculate a prisoner's full confinement time and then recalculate jail and prison time separately* at the 15 percent reduction, thereby adding to their workload." (Executive Director Susan Cohen, Cal. Probation, Parole and Correctional Assn., letter to Assemblyman Richard Katz, Apr. 15, 1993.) This concern was later restated verbatim in a letter dated June 24, 1993. (Executive Director Susan Cohen, Cal. Probation, Parole and Correctional Assn., letter to Assemblyman Richard Katz, June 24, 1993.) A subsequent letter, dated July 28, 1993, clarified that the concern "raised in" the prior letters was that "probation officer[s]" would have to calculate "jail credits" for "certain *prison-bound inmates*"—i.e., those subject to section 2933.1—"differently from other sentenced prisoners[]," such as those "who will be serving their full sentence in the jail." (Executive Director Susan Cohen, Cal. Probation, Parole and Correctional Assn., letter to Assemblyman Richard Katz, July 28, 1993.) Thus, the letter the majority cites raised the "same concern" as the enrolled bill report (maj. opn., *ante*, at p. 776, fn. 15) only in the sense it noted that the statute would require additional work. The cited letter is simply unrelated to the relevant language in the statement of intent and sheds no light on that language, which was published on August 31, 1994, more than a year after the letter was sent.

### IV. *The Majority's Conclusion Produces Absurd and Unfair Results That the Legislature Did Not Intend*

Lacking statutory language, legislative history, or case law to support its interpretation, the majority ultimately relies only on its own sense of fairness. According to the majority, the People's interpretation "is not entirely fair" to petitioner and others in his situation because it would make section 2933.1(a)'s credit limit applicable even after petitioner's "conviction for the violent offense gives the [CDC] no claim to his physical custody." (Maj. opn., *ante*, at p. 777.) On the other hand, the majority asserts, its interpretation is "fair . . . to the People, because it imposes a real restriction on a violent offender's ability to earn worktime credits." (Maj. opn., *ante*, at p. 781.)

In reality, the result in this case of applying the majority's interpretation is both unfair to the People and absurd; under it, *because* petitioner committed a nonviolent felony *in addition to* the violent felony, section 2933.1(a)'s credit limit will actually apply for a shorter period of time, and his actual time in prison will actually be less, than if he had committed only the violent felony. As noted earlier, when the second sentencing court imposed sentence for the violent felony conviction, it struck three one-year enhancements under section 667.5, subdivision (b), for prior prison terms because enhancements for these same prior prison terms had been imposed three weeks earlier in the drug possession case. Had these three one-year enhancements been imposed in connection with the violent felony conviction, petitioner's sentence for that conviction would have been eight years instead of five, section 2933.1(a)'s credit limit would have applied for all eight of those years, and petitioner would have had to serve 81.6 months in prison (which is 85 percent of eight years). According to the majority, because the three enhancements were imposed in connection with the nonviolent felony conviction instead of the violent felony conviction, section 2933.1(a)'s credit limit does not apply to the three years petitioner received for these enhancements and petitioner must serve only 81 months in prison. (Maj. opn., *ante*, at p. 780.) Thus, assuming that the second sentencing court correctly struck the enhancements—and the majority does not contend otherwise—under the majority's interpretation, petitioner will actually serve *less* time in prison *because* he committed an additional, albeit nonviolent, offense. Unlike the majority, I do not consider this result to be fair to the People, rational, or consistent with what the majority concedes was the Legislature's intent in passing section 2933.1(a): "to protect the public by *delaying* the release of prisoners convicted of violent offenses." (Maj. opn., *ante*, at p. 771, italics added.) In this regard, the majority's reading of the statute violates a basic rule of statutory interpretation: we must "avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend. [Citations.]" (*People v. Mendoza* (2000) 23 Cal.4th 896, 908 [98 Cal.Rptr.2d 431, 4 P.3d 265].) By contrast, the People's construction is consistent with the Legislature's intent

and is fair to petitioner because it makes section 2933.1(a)'s credit limit applicable to the three years petitioner would have received for the enhancements in the violent felony case but for the fact that they were fortuitously imposed three weeks earlier in the nonviolent felony case.

The majority errs in asserting that this absurd result is simply a product of "the second sentencing court's discretionary decision" to sentence petitioner concurrently, and "not of [the majority's] holding in this case." (Maj. opn., *ante*, at p. 781, fn. 20.) It is true that, under the majority's analysis, section 2933.1(a)'s credit limit would have applied to the enhancements had the second sentencing court sentenced petitioner consecutively. (Maj. opn., *ante*, at p. 781, fn. 20.) However, a second sentencing court does not have unlimited discretion to sentence a defendant consecutively, and must specify adequate grounds for doing so in a statement of reasons. (*People v. Champion* (1995) 9 Cal.4th 879, 934 [39 Cal.Rptr.2d 547, 891 P.2d 93]; *People v. Bradford* (1976) 17 Cal.3d 8, 20 [130 Cal.Rptr. 129, 549 P.2d 1225].) Assuming that a desire to ensure section 2933.1(a)'s application to the enhancements would have been a legally adequate reason in this case, I doubt the Legislature intended to make this a driving factor in a court's decision to sentence a defendant consecutively rather than concurrently.[8] In any event, under the People's construction, section 2933.1(a)'s credit limit would apply to the enhancements *notwithstanding the second sentencing court's decision to sentence petitioner concurrently*. Thus, contrary to the majority's assertion, the fact that section 2933.1(a) does not apply to petitioner's enhancements most certainly is "the result . . . of [the majority's] holding in this case." (Maj. opn., *ante*, at p. 781, fn. 20.)

In any event, putting aside the fact that the People's construction would not be unfair to petitioner and that the majority's interpretation is unfair to the People, the majority errs in basing its conclusion on whether the People's construction is "entirely" fair to petitioner and others in his situation. (Maj. opn., *ante*, at p. 777.) As the majority elsewhere recognizes, one of the considerations we sometimes look to in construing credit statutes is whether a proposed construction, in addition to being " 'faithful to [the statute's] language, . . . produces fair and reasonable results *in a majority of cases*' " (maj. opn., *ante*, at p. 771, italics added), not whether it is *entirely* fair in a particular kind of case. Indeed, we have expressly "recognize[d] that any rule or combination of rules is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice." (*In re Joyner* (1989) 48 Cal.3d 487, 495 [256 Cal.Rptr. 785, 769 P.2d 967].) I have already shown that the majority's interpretation is not

---

[8] Ironically, the majority's holding, although premised on purported fairness to defendants like petitioner, may actually work to their disadvantage by encouraging courts to sentence them consecutively instead of concurrently.

faithful to the statute's language viewed in statutory context and in light of our case law. Nor will it produce fair and reasonable results *in a majority of cases*. In my view, it is neither fair nor reasonable to have one credit rule for violent offenders who are concurrently sentenced, and a different rule for violent offenders who are consecutively sentenced. Indeed, the majority fails even to attempt to explain why the Legislature would have wanted to draw this distinction. Moreover, where a nonviolent felony and a violent felony are committed in connection with each other, there is nothing unfair or unreasonable about limiting credits earned by a concurrently sentenced violent offender during his or her entire term of confinement. Although the offenses petitioner committed in this case were unrelated, the majority's rule is not so limited; it applies to all cases involving concurrent sentencing. Because the People's construction, rather than the majority's, will produce fair and reasonable results in the majority of cases—*and* is faithful to the statutory language and consistent with the legislative history—we should adopt the People's construction even were the majority correct that the result of applying it is not *entirely* fair *to petitioner in this case*.

Finally, I have serious doubt about the majority's assertion that its interpretation "can be readily understood and applied." (Maj. opn., *ante*, at p. 779.) The majority is correct that this is an additional consideration—along with the statutory language and the reasonableness of the results—we sometimes look to in construing credit statutes. (Maj. opn., *ante*, at p. 771, citing *In re Joyner*, *supra*, 48 Cal.3d at p. 495.) However, the majority is incorrect in asserting that its interpretation satisfies this consideration. (Maj. opn., *ante*, at p. 779.) In this regard, the majority errs in suggesting that its interpretation fits easily within the existing procedures of the CDC. (Maj. opn., *ante*, at p. 777, fn. 16.) As the majority notes, according to the CDC's Operations Manual, the CDC "calculates a prisoner's earliest possible release date . . . , adjusted for worktime credit, by reference to a 'controlling term.' [Citation.]" (*Ibid.*) The Operations Manual also specifies that "[t]he term which retains the person in custody the longest shall be the controlling term." (Cal. Dept. of Corrections, Operations Manual (2000) § 73030.7.8.) Thus, under existing CDC procedures, the controlling term here for purposes of determining sentence credits is the longer term imposed for petitioner's nonviolent offense. However, according to the majority, "[p]etitioner's shorter concurrent term for the violent offense properly controlled the rate at which he accrued worktime credit only until he completed that term," and "the longer concurrent term for the nonviolent offense . . . properly controlled his . . . ability to earn worktime credit" thereafter. (Maj. opn., *ante*, at pp. 777–778, fn. 16.) This discrepancy between the CDC's actual practice and the majority's analysis undermines the majority's view about the simplicity of its interpretation.

By contrast, the People's construction surely "*can* be readily understood and applied." (Maj. opn., *ante*, at p. 779, italics added.) Moreover, as I have already shown, the People's construction, unlike the majority's interpretation, also is faithful to the statutory language and consistent with the legislative history, and would produce fair and reasonable results in both this and the majority of cases. For all of these reasons, I would adopt the People's construction. I therefore dissent.

Baxter, J., and Brown, J., concurred.

Respondent's petition for a rehearing was denied July 27, 2005. Chin, J., was of the opinion that the petition should be granted.