Filed 9/5/14  P. v. Fadiboard CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MUSLIM FADIBOARD,<br><br>    Defendant and Appellant. | B252927<br><br>(Los Angeles County<br>Super. Ct. No. BA412041) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed as modified.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant Muslim Fadiboard guilty of two counts of first degree burglary (Pen. Code, § 459; counts 6 & 7),[1] three misdemeanor counts of receiving stolen property (§ 496, subd. (a); counts 2, 3 & 4), and one count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 5).[2]  The trial court imposed a sentence of four years in state prison, consisting of the low term of two years for one count of first degree burglary (count 6), a consecutive eight-month term for the possession charge (count 5), and a consecutive term of one year and four months for the other burglary charge (count 7).  The court also imposed a consecutive term of 180 days in county jail for one count of receiving stolen property (count 2).  The sentences for the other two counts of receiving stolen property (counts 3 & 4) were stayed pursuant to section 654.

In this appeal from the judgment, appellant contends that:  (1) his multiple convictions for receiving stolen property should be consolidated into a single conviction, and (2) although the trial court correctly awarded the total number of presentence custody credits, it improperly allocated that number between the jail and prison terms.  We disagree with the first contention, agree with the second, and affirm the judgment as modified.

## FACTUAL BACKGROUND

### I.     5418 Harold Way:  Receiving Stolen Property (Count 2)

Michael Flynn lived in an apartment building located at 5418 Harold Way in Los Angeles.  On June 1, 2013, at around 6:30 a.m., Flynn returned to his apartment after briefly going out to buy coffee.  He closed his front door but did not lock it, and then

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     Appellant was acquitted of one count of first degree burglary.  (§ 459; count 1.)

went upstairs. About 10 minutes later, he came downstairs and noticed that his laptop was missing from his kitchen table. He went outside and looked around but did not see anyone. A few hours later he realized that his wallet, which he had placed near the front door after returning from buying coffee, also was missing. He immediately called his credit card companies and canceled the cards. Surveillance video taken at 7:30 a.m. that day at a Ralphs grocery store near Flynn's apartment showed appellant making a purchase at the self check-out register. Flynn's bank statement confirmed that a transaction totaling $119.80 was made at that Ralphs using his card.

## II.    1730 North Gramercy:  Receiving Stolen Property (Count 4) and Residential Burglary (Count 7)

Giles Spencer, a tenant at an apartment building at 1730 North Gramercy, reported to the building manager the morning of June 2, 2013, that someone had broken into his car. The manager, Paul Hughes, viewed surveillance video depicting appellant gaining access to the building through a staircase window. Appellant proceeded to the mailbox area and pulled mail from individual boxes. He then walked into the parking garage and tried to open various car doors. Around 5:46 a.m., he found a Mercedes that was unlocked and entered it. He stayed in the car, moving around inside with a flashlight, before finally exiting at 6:03 a.m. Later that morning, the manager discovered some tenant mail as well as the registration and owner's manual for the Mercedes discarded under a stairwell. The Mercedes belonged to Spencer, who later confirmed his wallet, car manual, and registration were missing from his car. The manager returned the registration and manual to Spencer. The manager recognized appellant from surveillance video taken a couple of months earlier, on March 15 and 18, 2013, showing appellant walking through the garage and trying to open car doors and trunks.

**III. 5555 Harold Way: Receiving Stolen Property (Count 3), Possession of Methamphetamine (Count 5), and Residential Burglary (Count 6)**

Soon after leaving the Gramercy apartment building on June 2, 2013, appellant gained access to a nearby apartment building at 5555 Harold Way. Surveillance video taken at 6:21 a.m. showed appellant opening compartments in the bed of a pickup truck in the parking garage. A few minutes later, a tenant reported to the building manager, Jose Velasco, that he had seen a suspicious person in the garage. Velasco went to the garage with his dog. On the subterranean parking level, he saw appellant standing next to a Mazda Miata convertible, peering into it. Velasco recognized appellant from an incident two months earlier when Velasco had confronted appellant about his presence in the apartment building. Velasco had retreated when appellant opened his bag and revealed a knife. After seeing appellant by the Mazda, Velasco took his dog back to his apartment and went back to the garage. He watched appellant leave the building, then followed appellant in his car. Velasco called the police. At about 6:50 a.m., Velasco flagged down responding officers and directed them to appellant. The police officers detained appellant. The location where appellant was detained was within a half-square mile radius of the Gramercy and Harold Way apartment buildings.

When detained, appellant was carrying two bags containing methamphetamine in a plastic bag, Flynn's wallet, Spencer's wallet, and four ibuprofen and prescription medication bottles. At around 7:00 a.m., Velasco informed the owner of the Mazda, Peter Cluff, about the suspicious activity he had observed. Officers met with Cluff shortly thereafter, and Cluff confirmed that a large bag containing ibuprofen and pharmaceutical bottles was missing from his trunk. The items belonged to Timothy Carney, who lived with Cluff and also used the car. The prescription bottles recovered from appellant's bags had Carney's name on them. Flynn's laptop and credit card used by appellant to make a purchase at Ralphs were not recovered.

Appellant did not present any evidence.

4

## I.  Multiple Convictions of Receiving Stolen Property Were Appropriate

Appellant contends that although counts 2, 3, and 4 alleged that he violated section 496 by withholding, concealing, buying, *and* receiving specific items of stolen property, the jury did not designate which theory of liability it relied upon in finding him guilty, and found merely that each count occurred on the same day, as charged in the information. According to appellant, the jury therefore necessarily found that he withheld and concealed the property on one occasion, thus constituting a single violation of section 496. We disagree.

Section 496, subdivision (a) provides in relevant part as follows: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail."[3]

In order to sustain a conviction for receiving stolen property, the prosecution must prove that (1) the property was stolen; (2) the defendant knew the property was stolen; and (3) the defendant had possession of the stolen property. (*People v. Johnson* (1980) 104 Cal.App.3d 598, 605; *People v. Kunkin* (1973) 9 Cal.3d 245, 249; see also *People v. Price* (1991) 1 Cal.4th 324, 464.)

"[T]he theft of several articles at the same time constitutes but one offense although such articles belong to several different owners." (*People v. Bauer* (1969) 1 Cal.3d 368, 378, citing *People v. Smith* (1945) 26 Cal.2d 854, 859.) "'[I]f the evidence shows that goods stolen from different sources were received on a single occasion, there is but one offense of receiving stolen property. However, this rule is inapplicable when there is evidence from which the jury might infer that the goods were not received at the

---

[3]    The jury here was accurately instructed in accordance with section 496, subdivision (a).

5

same time or in the same transaction.'" (*People v. Morelos* (2008) 168 Cal.App.4th 758, 763, citing *People v. Lyons* (1958) 50 Cal.2d 245, 275.)  The *Morelos* court observed: "[W]here the receiving counts involve different property stolen from different victims at different times and where nothing in the record shows [the defendants] received the property on a single occasion, 'the record reasonably supports the inference that [the defendants] received the various stolen goods at different times and in different transactions.'" (168 Cal.App.4th at p. 763.)  The court concluded that nothing in the record showed that defendants received the various stolen goods on a single occasion. Thus, the *Morelos* court found that conviction of and sentencing on all the receiving counts alleged were proper as to each count.  (*Ibid*.; see also *People v. Bullwinkle* (1980) 105 Cal.App.3d 82, 92, disapproved on another ground in *People v. Laiwa* (1983) 34 Cal.3d 711, 728.)

Appellant contends that because the various items of stolen property were found during a single search, he withheld or concealed the items on a single occasion and thus was guilty of only one count of receiving stolen property.  He does not dispute that there was evidence he received the stolen goods at different times.  Instead, he argues that the prosecution's theory was that he was guilty of receiving stolen property on counts 2, 3, and 4 because he was found to have *withheld* and *concealed* all of the stolen property on June 2, 2013, and thus he could only be convicted on one count of withholding and concealing the various items of property.

In advancing this argument, appellant relies on *People v. Mitchell* (2008) 164 Cal.App.4th 442 (*Mitchell*).  He contends that *Mitchell* is controlling because there, as here, the theory of liability was unclear, the designated stolen items were discovered in the defendant's possession on a single date, and the violations were alleged to have occurred on that same date.  However, *Mitchell* is distinguishable.

In *Mitchell*, *supra*, 164 Cal.App.4th 442, defendant asserted that three of her four convictions for receiving stolen property should be reversed because the prosecution failed to prove the property subject to those counts was received on different occasions. Defendant was charged with receiving checks belonging to Billy C. on or about

6

December 20, 2004, receiving Barbara C.'s Discover credit card on or about the same date, receiving holiday ornaments belonging to Billy C. between November 28, 2004, and December 29, 2004, and receiving Barbara C.'s department store credit card on or about December 9, 2004. (*Id.* at p. 461.) The People conceded the first two counts were duplicative because the evidence showed the checks and Discover card were found in defendant's car at the same time. There was no evidence in the record as to precisely when defendant came into possession of any of the stolen property. (*Id.* at p. 463.)

The date alleged in the first two counts (i.e., the day the property was discovered by the police) was the day on which defendant *withheld* or *concealed* the property from its owner. As noted by the *Mitchell* court, the offense of receiving stolen property "may be committed in a number of ways, to wit, buying, receiving, concealing, selling, withholding, or aiding in concealing, selling, or withholding stolen property." (*Mitchell*, *supra*, 164 Cal.App.4th at p. 462.) The count alleging receipt of the department store credit card alleged the date the card was used by defendant to purchase merchandise. (*Id.* at p. 463.) As to the final count alleged, the evidence showed the defendant gave her sister a key to a storage unit at the end of November 2004 and the holiday ornaments were found in the unit on December 29, 2004. (*Ibid.*) Although defendant was charged in these counts in the alternative with buying, receiving, concealing, selling, withholding, or aiding in concealing or withholding property, there was no evidence presented as to defendant's buying, receiving, or selling any of the property. Defendant's guilt therefore turned on when she concealed or withheld the property described in each count. The prosecutor explained to the jury that "these counts were based on defendant's possession of the property, i.e., her concealing or withholding the property, on the indicated days." (*Ibid.*)

Addressing defendant's challenge to her conviction on three of the four counts of receiving stolen property, the appellate court held that the People were not required to prove when defendant received the property, as that was not their theory of liability. The prosecution merely needed to prove defendant concealed or withheld the property. Because the evidence showed defendant possessed both the checks and the Discover card

7

on the same date, she could not be convicted on both offenses. (*Mitchell*, *supra*, 164 Cal.App.4th at p. 463.) The appellate court therefore reversed her conviction on one of those counts, but left the other three convictions undisturbed, finding the People satisfied the burden of proving that defendant concealed or withheld the subject property at the time alleged. (*Ibid.*)

Here, appellant was charged in counts 2 and 4 with receiving stolen property "[o]n or about June 2, 2013," in that he "did unlawfully buy, receive, conceal, sell, withhold, and aid in concealing, selling, and withholding property, to wit, wallet and contents," knowing said property had been stolen and obtained by extortion. (Capitalization omitted.) In count 3 he was charged with receiving stolen property "[o]n or about June 2, 2013," in that he "did unlawfully buy, receive, conceal, sell, withhold, and aid in concealing, selling, and withholding property, to wit, prescription medication," knowing said property had been stolen and obtained by extortion. (Capitalization omitted.) Count 2 pertained to Flynn's wallet; count 3 pertained to the prescription medication from Cluff's convertible; and count 4 pertained to Spencer's wallet.

The ultimate question in our review is whether "'the record reasonably supports the inference that appellant[] received the various stolen goods at different times and in different transactions.'" (*Morelos*, *supra*, 168 Cal.App.4th at p. 763, citation omitted.) The prosecutor argued to the jury that "[t]o find someone guilty of the crime of receiving stolen property you must find two things beyond a reasonable doubt. First, the defendant bought, concealed or withheld from its owner or agent . . . property that had been stolen and when he did so he knew that the property had been stolen." She explained that appellant was charged with three counts of receiving stolen property, including items from Spencer's car, the medication from the Miata, and Flynn's wallet. "All of those items . . . were recovered on the defendant when the police stopped him or recovered in his bag [*sic*]." Shortly thereafter, she described the properties involved "in chronological order." The prosecutor recalled for the jury Flynn's going upstairs in his apartment and returning downstairs 10 minutes later to find his laptop and (later) his wallet missing, and appellant's use of Flynn's credit card about one hour later at a nearby market. The

8

prosecutor noted that count 2 for receiving stolen property was "for the wallet and the wallet's contents that are found on the defendant the following day. . . . *So that's June 1st, right*?" (Italics added.) She then proceeded to describe the two residential burglaries on June 2, and the items stolen during each, linking the evidence to two counts of receiving stolen property, and two counts of residential burglary.

While the prosecutor's argument as to the elements of receiving stolen property was not a model of clarity, by describing the events in chronological order and emphasizing the evidence that appellant received, possessed, and otherwise withheld Flynn's property on June 1, it is clear that the prosecution's theory was not that appellant withheld and/or concealed all of the stolen property on June 2, when it was recovered from him. Rather, the prosecutor presented ample evidence that appellant received property that was stolen or obtained in a manner constituting theft or extortion, knowing the property to be so stolen or obtained, *and* concealed and withheld property from the owners, knowing the property to be stolen. (§ 496.) Indeed, she presented evidence indicating precisely when, almost to the minute, appellant came into possession of each item of stolen property.

Appellant contends that the information charged that all three receiving stolen property counts were alleged to have occurred on June 2, 2013, and by finding him guilty as charged the jury necessarily found only that he withheld or concealed all of the stolen property on a single occasion, that is, when it was discovered in his possession. We disagree. In the first place, the information alleged that counts 2, 3, and 4 occurred "[*o*]*n or about* June 2, 2013." (Italics added.) That language gave the prosecution the latitude to rely on the theory that appellant received Flynn's stolen wallet on June 1, 2013, received Carney's prescription medication the following day, and received Spencer's wallet at a separate time on June 2, 2013.[4]

Second, "[t]he precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time

---

[4]    The information stated as to count 1, pertaining to the burglary involving Flynn's laptop and wallet, that the crime occurred on or about June 1, 2013.

before the finding or filing thereof, except where the time is a material ingredient in the offense." (§ 955.) As such, "'[t]he burden was on the People to prove that the offenses occurred within the period of limitation but they [we]re not required to prove the date with exactness. [Citation.] A variance is immaterial unless time is of the essence of the offense. [Citation.] "An immaterial variance should be disregarded [citations]. The test of the materiality of a variance is whether the indictment or information so fully and correctly informs the defendant of the criminal act with which he is charged that, taking into consideration the proof which is introduced against him, he is not misled in making his defense, or placed in danger of being twice put in jeopardy for the same offense."'" (*People v. Mack* (1959) 169 Cal.App.2d 825, 829, quoting *People v. Amy* (1950) 100 Cal.App.2d 126, 127. See also *People v. Rice* (1887) 73 Cal. 220 [in prosecution for receiving stolen property, evidence showed offense was committed three months before the time alleged in the information; court held variance immaterial].)

We conclude that appellant could not have been misled with regard to the criminal acts with which he was charged, and the jury could not have been misled as to the prosecution's theory regarding the receiving stolen property counts. The evidence as presented, as well as the prosecutor's manner of arguing that appellant was in receipt of specific items of stolen property on distinctly separate occasions, support the conclusion that appellant correctly was convicted of and sentenced on three separate counts of receiving stolen property.

## II. Presentence Custody Credits Were Improperly Allocated

Appellant contends that although the trial court awarded the correct number of total presentence custody credits (312 days) under section 2900.5, subdivision (a), it improperly allocated that number between the jail and prison terms. We agree.

Whether the trial court correctly applied section 2900.5, subdivision (a) to the undisputed facts of appellant's presentence custody credits is a question of law that we review de novo. (*People v. Anaya* (2007) 158 Cal.App.4th 608, 611.)[5]

### A.     *Relevant Factual Background*

At sentencing, the trial court calculated that appellant had served 156 days in actual custody, from his arrest on June 2, 2013, to the day of sentencing on November 5, 2013. As a result, the court awarded appellant 156 days of conduct credits under section 4019, for a total of 312 days of presentence custody credits. The court allocated 180 days of the credits (90 days of actual custody time plus 90 days of conduct credits) to "offset" the 180-day consecutive jail term on count 2. The court applied the remaining credits to the felony counts, which was 66 days of actual custody time plus 66 days of conduct credits for a total of 132 days of credit.

### B.     *Applicable Law*

"A criminal defendant is entitled to accrue both actual presentence custody credits under section 2900.5 and conduct credits under section 4019 for the period of incarceration prior to sentencing. Conduct credits may be earned under section 4019 by performing additional labor (§ 4019, subd. (b)) and by an inmate's good behavior (*id.*, subd. (c)). In both instances, section 4019 credits are collectively referred to as conduct credits. (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) The court is charged with awarding such credits at sentencing. (§ 2900.5, subd. (a).)" (*People v. Ramirez* (2014) 224 Cal.App.4th 1078, 1083 (*Ramirez*).)

Section 2900.5, subdivision (a) provides in relevant part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in

---

[5]     Defendant was not required to object below to invoke appellate review of an unauthorized sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) "A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered." *(People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

custody, including . . . any time spent in a jail, . . . all days of custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019 . . . , shall be credited upon his or her *term of imprisonment*, or credited to any fine, including, but not limited to, base fines, on a proportional basis, that may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of *the term of imprisonment to be imposed, the entire term of imprisonment* shall be deemed to have been served. In any case where the court has imposed *both a prison or jail term of imprisonment and a fine*, any days to be credited to the defendant shall first be applied to *the term of imprisonment* imposed, and thereafter the remaining days, if any, shall be applied to the fine, including, but not limited to, base fines, on a proportional basis." (Italics added.)

Our role in construing section 2900.5, subdivision (a) "as with any statute, is to ascertain the Legislature's intent so as to effectuate the purpose of the law. We accomplish this task if possible by giving the words of the statute their usual, ordinary meanings. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)" (*In re Reeves* (2005) 35 Cal.4th 765, 770 (*Reeves*).) The effort to apply this statute to the case at hand reveals ambiguities the Legislature apparently did not foresee. (*Ibid.*)

On its face, section 2900.5, subdivision (a) does not expressly address allocation of presentence custody credits between consecutive prison and jail terms. It refers instead to a defendant's "term of imprisonment" as a whole without defining what a term of imprisonment entails. The statute does not mention a situation in which a court imposes both a prison term *and* a jail term, although in the last sentence it addresses a situation in which a court has imposed both a term of imprisonment (either in prison *or* in jail) and a fine. In doing so, the statute thereby indicates that a single "term of imprisonment" can encompass both jail and prison terms.

Moreover, in providing that "[i]f the total number of days in custody exceeds the number of days of *the term of imprisonment to be imposed, the entire term of imprisonment* shall be deemed to have been served," the statute suggests a single award

12

of credit is applied against a single term of imprisonment (inclusive of county jail and prison components), the *entirety* of which may be deemed to have been served. (§ 2900.5, subd. (a).) In that context, section 2900.5 would appear to require that the credit be awarded against that single "term of imprisonment," meaning a single, indivisible award of credit.

"When a statute is capable of more than one construction, '"[w]e must . . . give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.'" (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744, quoting *Marshall M. v. Superior Court* (1999) 75 Cal.App.4th 48, 55.)" (*Reeves*, *supra*, 35 Cal.4th at p. 771, fn. 9.) We therefore must attempt to give the statute a reasonable interpretation. In so doing, we find instructive case law in analogous situations.

In *Reeves*, *supra*, 35 Cal.4th 765, our Supreme Court was called upon to interpret section 2933.1, subdivision (a), which limits worktime credit for a person convicted of violent offenses to no more than 15 percent of the entire term of imprisonment. (*Id.* at p. 768.) The *Reeves* court rejected a defendant's argument in another case, *People v. Ramos* (1996) 50 Cal.App.4th 810, that he was entitled to different credit rates for his violent and nonviolent offenses. (*Reeves*, *supra*, at p. 775.) In rejecting that argument, *Reeves* noted that section 2933.1 did not contain language to support a trial court's parsing out "overlapping terms eligible to earn credit at different rates." (*Id.* at p. 775.) After a discussion of the statutory language, *Reeves* held that section 2933.1, subdivision (a), limits to 15 percent the worktime credit rate of a prisoner serving time for a violent offense, "regardless of any other offenses for which such a prisoner is simultaneously serving a sentence." (*Id.* at p. 780.) The *Reeves* court rejected the notion that consecutive terms of imprisonment are served one after another in a discernable sequence such that different percentage rates of prison conduct credit can apply to different spans of the defendant's time in prison. "To suggest that a prisoner serving an aggregate term serves the component terms and enhancements in any particular sequence would be a

13

meaningless abstraction." (*Id.* at p. 773.) Under *Reeves,* consecutive terms become one, single sentence. Similarly, in discussing the calculation of presentence custody credits, the court stated, "[a] period of presentence confinement is indivisibly attributable to all of the offenses with which [the defendant] is charged and of which he is eventually convicted." (*Id.* at p. 775.)

In *Ramirez*, *supra*, 224 Cal.App.4th at page 1084, defendant appealed from the trial court's calculation of his presentence custody credits, arguing that because some of the offenses to which he pleaded no contest were committed after October 1, 2011, he was entitled to application of the more generous conduct credits available under the statute in effect at that time. The Court of Appeal noted that only one rate could be applied, stating, "as the parties correctly point out, Ramirez's presentence confinement cannot be divided among his various offenses, with the court applying one credit rate to those committed before October 1, 2011, and a different rate to those committed after that date. His confinement must be 'indivisibly attributable to all of the offenses with which [he] is charged and of which he is eventually convicted.' (*In re Reeves*[, *supra*,] 35 Cal.4th 765, 775.) As a result, Ramirez was either awarded the appropriate number of conduct credits by the trial court, or he was entitled to an additional 85 days under the current version of section 4019. There is no middle ground." (*Ramirez*, *supra*, at p. 1084.)

Respondent argues *Ramirez* and *Reeves* are inapplicable to the situation here because the trial court did not apply different rates of credit for different offenses. Nonetheless, we conclude that the principles discussed in *Reeves* and *Ramirez* provide important guidance here. The salient point of those decisions is that custody credits could not be earned at different rates because the confinement period was to be considered indivisible. Similarly here, we conclude that nothing in section 2900.5 suggests that the trial court has the authority to divide appellant's single credit award between the county jail and prison components of the sentence imposed, which joined to comprise a single term of confinement. We therefore order the abstract of judgment

14

modified to reflect that appellant's 156 actual credits and 156 conduct credits, for a total of 312 days' custody credits, apply uniformly to appellant's entire term of imprisonment.

## DISPOSITION

The trial court is directed to correct the abstract of judgment to reflect appellant's total of 312 days of custody credits apply uniformly to appellant's entire term of imprisonment, and the clerk is directed to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, J.*

We concur:

EPSTEIN, P. J.

WILLHITE, J.

_____

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.