Filed 2/14/23  P. v. Smith CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NATHAN MIKEL WAYNE SMITH,<br><br>Defendant and Appellant. | F081895<br><br>(Super. Ct. No. BF166123A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II and Eric Bradshaw, Judges.[†]

Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Levy, J. and Meehan, J.

[†]    Judge Bradshaw presided at the resentencing hearing.

## INTRODUCTION

Appellant and defendant Nathan Mikel Wayne Smith was convicted by a jury of multiple counts of possession of a stolen vehicle, felon in possession of a firearm, felon in possession of ammunition, possession of a concealable firearm while not the registered owner, carrying a loaded firearm in a public place, and possession of stolen property.[1]

On appeal, defendant contends the matter should be remanded with direction that the trial court recalculate defendant's custody credits without the limitation on conduct credits pursuant to Penal Code section 2933.1.[2] Defendant also requests that this court review the trial court's *Pitchess*[3] motion ruling to determine whether the trial court abused its discretion by declining to disclose any records. The People agree that the case should be remanded for recalculation of defendant's custody credits, and they also agree that this court can independently review the sealed materials in connection with defendant's *Pitchess* motion. However, the People oppose defendant's contention that section 2933.1 should not be applied to limit defendant's presentence custody credits.

We conclude the trial court did not abuse its discretion in denying defendant's *Pitchess* motion. However, we agree with the parties that the trial court miscalculated defendant's custody credits and remand for the court to recalculate defendant's custody credits and prepare an amended abstract of judgment.

---

[1]   In a companion case presently before this court, *People v. Nathan Smith* case No. F082143, defendant was convicted of two first degree burglaries with persons present in the residence at the time of the offenses.

[2]   Further statutory references are to the Penal Code unless otherwise noted.

[3]   *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

# FACTUAL BACKGROUND[4]

*Prosecution Evidence*

On October 31, 2016, California Highway Patrol (CHP) Officer Aaron Taylor observed a 2014 Toyota Tacoma in the vacuum area of a car wash at approximately 11:00 a.m. Taylor ran a records check on the license plate of the vehicle, which indicated the vehicle was reported as stolen by the registered owner, Michael Humecky. Defendant was with the car, and he was found detailing the vehicle. CHP Officer Matthew Ashe responded to Taylor's request for backup units. When the officers approached defendant and placed him under arrest, Taylor observed a brown holster on defendant's right hip. Ashe removed a .22-caliber handgun from the holster that was not registered to anyone.

Defendant acknowledged having three additional firearms in the vehicle when questioned by Taylor. The officers located a .22-caliber rifle, .38-caliber handgun, and an AR-style collapsible .22-caliber rifle. The .38-caliber handgun and collapsible .22-caliber rifle were reported stolen, and the .22-caliber rifle was not registered. Over 100 live rounds of ammunition, $4,112 in cash, multiple credit cards belonging to others, and a glass pipe for smoking methamphetamine were also located in the vehicle. Defendant told Taylor that the vehicle belonged to a friend, and he claimed to be doing the friend a favor by taking it to the car wash. The registered owner of the vehicle, not a friend of defendant's, arrived at the scene later that evening to reclaim the vehicle.

On January 8, 2017, Michael Hatcher returned home from vacation with his family to find the back gate open. Hatcher found multiple bags next to the gate containing items that were normally kept in a shop behind his home. A .38-caliber pistol was also found on the ground near the bags, which was previously kept in a drawer in his house. Hatcher went to the house and saw that the door to his garage was broken. The home was in

---

**4** We summarize the material facts that support the convictions and true findings. We provide additional facts later in this opinion when relevant to the issues raised.

shambles, with drawers dumped out. Several firearms were missing from a closet in his home, including seven long guns and one pistol. Over the next month, Hatcher discovered jewelry, clothing, tools, electronics, and other items were also missing. Hatcher informed law enforcement that some of his stolen items were being moved from one motel to another.

The following day, Kern County Sheriff's Deputies Robert Gonzalez and Ryan Pollack were dispatched to a local motel. Pollack entered an empty motel room that was registered in defendant's name with an access card from an employee of the motel. There were firearms, ammunition, and tools laid out on the bed. Hatcher identified the firearms, including three shotguns and a .22-caliber rifle as belonging to him.

Gonzalez encountered defendant on the second floor, and defendant told Gonzalez that his name was "Bob." Defendant provided Gonzales with his real name after he was asked a second time. Hatcher confirmed that multiple items recovered on defendant's person belonged to him. Defendant initially claimed that the items belonged to him, and he then tried to claim that a person named Kyle gave the items to him. Defendant's story changed again when he stated the items in the motel room belonged to Lindsay Lopez, and he insisted that he was trying to help her sell the items.

Lopez was under the influence of methamphetamine when she was interviewed by Gonzalez. She claimed the stolen firearms, tools, and ammunition were in the motel room when she arrived to retrieve her clothes. Defendant told Lopez that he burglarized the Hatcher's home along with Logan Farnsworth and Breanna Martinez. Farnsworth and Martinez were staying in the room next door to defendant's motel room. Farnsworth and Martinez had possession of some stolen property from Hatcher's home.

### Defense Evidence

A coworker of Humecky, Travis Cummings, saw Humecky's truck parked in a parking lot. A middle-aged Hispanic man was walking around the stolen truck, and a younger man drove the truck away. A sheriff's deputy found items that were stolen from

4.

Hatcher's home during a traffic stop of a vehicle driven by Maria Salgado on January 11, 2017. The mother of Farnsworth, Robyn Riley, was a passenger of Salgado's vehicle. Stolen property from the Hatcher's home was also located in the home of Kyle Shepard.

Lopez told a private investigator that she felt Gonzalez pressured her, and she denied seeing any duffel bags or firearms at the motel. Gonzalez collected palmprints and full handprints from the safe at Hatcher's home. An identification technician with the Kern County Sheriff's Office was unable to match any of the prints from the safe to defendant's prints.

## DISCUSSION

### I. Custody Credit

#### A. Miscalculation of Custody Credits

" 'Penal Code section 2900.5 imposes on the sentencing court the obligation to determine the number of days of custody *and, in those cases to which it expressly applies, conduct credit to which the defendant is entitled ….*' " (*People v. Superior Court* (*Frezier*) (2020) 54 Cal.App.5th 652, 660–661, quoting *People v. Sage* (1980) 26 Cal.3d 498, 508–509.) "Under section 4019, '[i]n addition to actual credit … detainees in local institutions are usually able to earn credit against their eventual sentence for good behavior and work performed.' " (*Frezier*, at p. 661, quoting *People v. Brown* (2020) 52 Cal.App.5th 899, 902–903 (*Brown*).) Relevant in this case, these conduct credits are available for those inmates confined in county jail from the date of arrest to imposition of sentence for a felony conviction and for those misdemeanants serving a jail sentence. (§ 4019, subd. (a)(1); *Sage*, at pp. 503–504.) "[F]or each four-day period in which a prisoner is confined and has been on good behavior, the prisoner will receive two days of conduct credits (§ 4019, subds. (b), (c); see also *People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3)," and " 'a term of four days will be deemed to have been served for every two days spent in actual custody.' (§ 4019, subd. (f).)" (*Frezier*, at p. 661, fn. omitted.)

5.

The parties agree that the trial court erred when it only awarded defendant 674 days of actual custody credits and 101 days of conduct credits at his resentencing on December 2, 2020. At defendant's initial sentencing on October 6, 2020, the trial court sentenced defendant to a total determinate term of 20 years in state prison with 2,520 days of custody credits. Defendant was awarded 1,260 days of credits for actual time served and 1,260 days of conduct credits. On December 2, 2020, defendant was resentenced on both the present case and case No. F082143. Defendant's total sentence for the two cases was 37 years in state prison. The trial court imposed terms of 16 months on each count, with two years for the out-on-bail enhancement, to be served consecutively with defendant's sentence in case No. F082143.

Although all other orders by the initial sentencing judge were to remain in full force and effect, the abstract of judgment provides only 775 days of custody credits. Defendant's new custody credits were comprised of 674 days of actual custody time and 101 days of conduct credits, which only accounted for defendant's custody credits from case No. F082143. We are unable to discern any explanation for the significant decrease in custody credits after defendant's resentencing. Based on the present record, we concur that the trial court miscalculated defendant's custody credits. Accordingly, we will remand with directions to recalculate defendant's custody credits.

### B. Limitation on Presentence Conduct Credit

The parties disagree as to whether section 2933.1's limitation on presentence conduct credit applies to credits before defendant's arrest for violent felonies connected to case No. F082143.

We exercise de novo review in addressing this issue of statutory construction. (*People v. Brewer* (2011) 192 Cal.App.4th 457, 461.) "Statutory construction begins with the plain, commonsense meaning of the words in the statute, ' "because it is generally the most reliable indicator of legislative intent and purpose." ' [Citation.] 'When the language of a statute is clear, we need go no further.' " (*People v. Manzo*

6.

(2012) 53 Cal.4th 880, 885.) Where the language of the statute is potentially ambiguous, " '[i]t is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the history and background of the provision, in an attempt to ascertain the most reasonable interpretation.' [Citation.] We may also consider extrinsic aids such as the ostensible objects to be achieved, the evils to be remedied, and public policy. [Citation.] When construing a statute, 'our goal is " 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " ' " (*Manzo*, at p. 886.)

"Section 2933.1, subdivision (c), … limits presentence conduct credit '[n]otwithstanding Section 4019 or any other provision of law' to '15 percent of the actual period of confinement' where a defendant is convicted of a felony offense listed in subdivision (c) of section 667.5." (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 79; accord, *In re Mallard* (2017) 7 Cal.App.5th 1220, 1225–1226; *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1310–1311.) It is not disputed that defendant was convicted of two first degree burglaries with people present in case No. F082143, which are violent felonies pursuant to section 667.5, subdivision (c).

Defendant argues that section 2933.1, subdivision (c)'s limitation on presentence conduct credit does not apply to the custody credits he earned prior to his arrest for the violent felonies in case No. F082143. In relation to the present case, defendant served time in local custody from October 31, 2016, to December 28, 2016 (59 days); January 9, 2017, to August 19, 2018 (588 days); and February 2, 2019, to September 29, 2020 (606 days). In connection with the violent felony charges, defendant initially spent four days in custody following his arrest on December 24, 2018. Defendant then served 623 days in local custody from February 2, 2019, to October 16, 2020, for additional violent felony offenses.

Defendant recognizes that section 2933.1 has been applied in similar circumstances. In *People v. Baker* (2002) 144 Cal.App.4th 1320, 1324, 1326, (*Baker*),

7.

the First District Court of Appeal held "that when a defendant is convicted of both a violent and a nonviolent felony in separate criminal proceedings, and receives a consecutive sentence on the two offenses, the presentence credits on both offenses are subject to the statutory limitation, even if the presentence custody time on the nonviolent offense was served prior to the commission of the violent offense." (*Baker*, at p. 1324; accord, *People v. Marichalar* (2003) 144 Cal.App.4th 1331, 1334–1337, (*Marichalar*).) Defendant challenges the validity of the First Appellate District's analysis in *Baker*, and he urges us to consider rejecting the reasoning from such cases.

The First Appellate District acknowledged in *Baker* that the language of section 2933.1 "does not specifically address" this issue. (*Baker*, *supra*, 144 Cal.App.4th at p. 1327.) It identified three justifications for its construction of section 2933.1. First, it noted our decision in *People v. Ramos* (1996) 50 Cal.App.4th 810, which held that section 2933.1 applies to the offender, not the offense. (*Baker*, at pp. 1327–1328.) The First Appellate District reasoned that application of section 2933.1 to the offender, rather than the offense, supported applying it to all presentence custody time served by the offender regardless of when it was served. (*Baker*, at p. 1328.)

Second, it is well established that when a defendant had already been sentenced in one proceeding and is later sentenced in another proceeding to a term consecutive to the one imposed in the prior proceeding, the second court may recalculate the term imposed in the first proceeding. The First Appellate District reasoned that the "same approach should govern here," and the court imposing sentence for the second crime "is entitled to recalculate the conduct credits previously awarded on an earlier conviction." (*Baker*, *supra*, 144 Cal.App.4th at p. 1329.)

Finally, the First Appellate District observed that, where an earlier nonviolent offense is sentenced with a later violent offense, the imposition of a consecutive subordinate term for one of the offenses benefits the defendant by reducing the total length of the prison term for that offense by two-thirds, which far outweighs the impact

on conduct credit from the application of section 2933.1 to presentence custody served prior to the violent felony conviction. (*Baker*, *supra*, 144 Cal.App.4th at p. 1329.)

Appellant contends that the decision in *Baker* is inconsistent with the reasoning of the Supreme Court in *In re Reeves* (2005) 35 Cal.4th 765 (*Reeves*). At the time the Supreme Court granted review in *Reeves*, it also granted review in *Baker*, *supra*, 144 Cal.App.4th 1320 and *Marichalar*, *supra*, 144 Cal.App.4th 1331, (see *Baker*, *supra*, 144 Cal.App.4th at p. 1327 ["[S]ection 2933.1, subdivision (c) limits presentence conduct credits for nonviolent crimes whenever the defendant has suffered a current conviction for a violent felony and the sentences for the two offenses are run consecutively, without regard to the timing of each conviction."] accord, *Marichalar*, *supra*, 144 Cal.App.4th at p. 1335.)

In *Reeves*, the defendant was convicted within one month of both a violent offense (assault with a deadly weapon other than a firearm), which triggered the 15 percent credit limitation of section 2933.1, subdivision (a), and a nonviolent offense (possessing a controlled substance for sale). He was sentenced to concurrent terms in state prison of five years plus an enhancement on the violent offense and 10 years plus enhancements on the nonviolent offense. (*Reeves*, *supra*, 35 Cal.4th at pp. 768–769.) The department calculated his release date based on its understanding that section 2933.1, subdivision (a) applied fully to both of the defendant's sentences so he would accrue only 15 percent worktime credit for the entire duration of his prison commitment, even after completing the five-year sentence for the violent felony. (*Reeves*, at p. 769.) The defendant challenged the court's decision in a petition for habeas corpus, which the trial court granted, reasoning that section 2933.1, subdivision (a) had no effect on his sentence for the nonviolent offense. The appellate court affirmed. (*Id.* at pp. 769–770.)

The Supreme Court viewed the issue of whether section 2933.1, subdivision (a) applied to the defendant's concurrent sentence as turning on the meaning of the phrase in section 2933.1, subdivision (a), " 'any person who is convicted of a [violent] felony

offense ….' " (*Reeves*, *supra*, 35 Cal.4th at p. 770.)  The court concluded the language is ambiguous, at least as applied to the facts of the case, noting the legislative history did not provide any guidance as to the application of credits to concurrent sentences.  (*Id*. at pp. 770–771.)  In searching for a reasonable construction of the statute, the court determined the phrase could not refer to a point of historical fact, thereby disqualifying for all time any person who had ever been convicted of a violent offense from earning more than 15 percent worktime credit.  (*Id*. at p. 771.)

The court also rejected the interpretations offered by the People and the defendant. The People argued section 2933.1, subdivision (a) applies to offenders rather than offenses, and therefore applies to a designated offender's entire period of confinement provided the offender at some point during that period serves time for a violent offense. The court acknowledged that the holding in *Ramos* "makes sense in the context in which the court spoke—that of presentence credits authorized by section 4019 and limited by section 2933.1(c)." (*Reeves*, *supra*, 35 Cal.4th at p. 775.)  The court criticized the argument of the defendant in *Ramos*, which would have "required the court to parse such a single, unitary period of presentence confinement into hypothetical, overlapping terms eligible to earn credit at different rates." (*Ibid*.)  However, it also rejected the People's contention that the rationale from *Ramos* should be applied to limit postsentence credits. (*Id*. at p. 776.)

With respect to consecutive terms, the court explained:  "We may confidently assume that an offender serving a sentence that combines *consecutive* terms for violent and nonviolent offenses is subject to the credit restriction imposed by section 2933.1(a) for the entire sentence.  Under the Determinate Sentencing Act (§ 1170 et seq.), multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' (§ 1170.1, subd. (a)) that merges all terms to be served consecutively and complies with the rules for calculating aggregate terms (e.g., one-third the base term for subordinate terms and specific enhancements applicable to

subordinate terms (*ibid.*)), whether or not the consecutive terms arose from the same or different proceedings (*ibid.*; see also § 669; Cal. Rules of Court, rule 4.452). To suggest that a prisoner serving an aggregate term serves the component terms and enhancements in any particular sequence would be a meaningless abstraction. For this reason, when an aggregate term includes time for a violent offense, at any point during that term the prisoner literally 'is convicted of a [violent] felony offense' (§ 2933.1(a)) and actually is serving time for that offense. Accordingly, a restriction on credits applicable to 'any person who is convicted of a [violent] felony offense' (*ibid.*) logically applies throughout the aggregate term." (*Reeves*, *supra*, 35 Cal.4th at pp. 772–773.)

The court explained that this logic does not apply to concurrent terms because although "[a] court that decides to run terms *consecutively* must create a new, 'aggregate term of imprisonment' (§ 1170.1, subd. (a)) into which all the consecutive terms merge, [ ] no principle of California law merges *concurrent* terms into a single aggregate term." (*Reeves*, *supra*, 35 Cal.4th at p. 773.) The court further noted that since the defendant had already served the term for the violent offense that caused section 2933.1, subdivision (a) to apply, the statement he " 'is convicted of a [violent] felony offense' " (*Reeves*, at p. 773.) is true only as a matter of historical fact, explaining that "[t]oday, his conviction for the violent offense gives the Department no claim to his physical custody; but for the time remaining on the separate, concurrent term for the nonviolent offense, he would be entitled to release." (*Id*. at p. 777.)

The court also rejected the defendant's interpretation of section 2933.1, subdivision (a), i.e., that it has no effect on his concurrent sentence for the nonviolent offense, thereby resulting in the accrual of credit at two different rates—15 percent on the term for the violent offense and 50 percent on the term for the nonviolent offense. (*Reeves*, *supra*, 35 Cal.4th at p. 778.) The court noted this interpretation created tension with the statutory language because during any period of time when the defendant is serving time in prison for both the violent and nonviolent offenses, he "most certainly '*is*

11.

convicted of a [violent] offense' (§ 2933.1(a), italics added) in every relevant sense. Thus, to permit him to accrue worktime credit during such a period of imprisonment at the rate of 50 percent for any purpose literally conflicts with the language of section 2933.1(a)." (*Reeves*, *supra*, 35 Cal.4th at pp. 778–779.)

The court concluded: "An interpretation of section 2933.1(a) exists that is faithful to its language and to what we know of the Legislature's purpose, produces fair and reasonable results, and can be readily understood and applied. Lacking definitive guidance in the language or history of the statute, our aim must be to identify such an interpretation. [Citation.] As mentioned at the outset, we interpret the section as follows: Section 2933.1(a) limits to 15 percent the rate at which a prisoner convicted of and serving time for a violent offense may earn worktime credit, regardless of any other offenses for which such a prisoner is simultaneously serving a sentence. On the other hand, section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense; such a prisoner may earn credit at a rate unaffected by the section." (*Reeves*, *supra*, 35 Cal.4th at pp. 779–780, fns. omitted.)

After *Reeves* became final, the Supreme Court dismissed review in *Baker* and *Marichalar* while at the same time ordering that those decisions be republished.[5]

---

[5]     Reporter's Note states: "This opinion, filed December 20, 2002, was previously reported at 104 Cal.App.4th 774 pursuant to the Court of Appeal's certification for partial publication. Review was granted February 25, 2003 (S112982); on November 15, 2006, the Supreme Court remanded the case to the Court of Appeal and ordered partial publication of the opinion."

(*People v. Baker* * (Cal.App.).)

    Reporter's Note states: "This opinion, filed June 26, 2003, was previously reported at 109 Cal.App.4th 1513. Review was granted July 28, 2003 (S117796); on November 15, 2006, the Supreme Court remanded the cause to the Court of Appeal and ordered publication of the opinion."

(*People v. Marichalar* * (Cal.App.).)

Defendant's reliance on *Reeves* is misplaced.  In *Reeves*, the court was concerned with section 2933.1, subdivision (a), as it relates to postconviction credits.  (*Reeves*, *supra*, 35 Cal.4th at pp. 768−769.)  The court itself recognized that *Ramos* presented a "different issue" than the one before it.  (*Reeves*, at p. 775.)  That observation is consistent with the court's earlier teaching that postconviction credit schemes have "disparate goals" and "distinct purposes" from presentence credit provisions.  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 36.)

The People cite us to a more recent case, *Brown*, *supra*, 52 Cal.App.5th at p. 909, which limited presentence conduct credits in the context of a parallel provision in section 2933.2.  In *Brown*, the Fourth District Court of Appeal held that the defendant sentenced on convictions for murder and possession of a loaded weapon was not entitled to presentence conduct credit against his sentence for time spent incarcerated between the date of his arrest on a cocaine charge and the date he was charged with murder.  (*Id.* at p. 909.)  The appellate court, following the holding of *Baker*, found the statute prohibiting award of presentence conduct credit on a conviction for murder applied to the offender, and not the offense, and thus prohibited an award of presentence conduct credit for the entire period of pretrial incarceration, including presentence incarceration attributed solely to the cocaine charge.  (*Ibid.*)  While acknowledging that the Supreme Court's republication orders may not amount to an express approval of the rationale of *Baker*, the appellate court believed that the Supreme Court's republication of *Baker* held significance.  (*Id.* at p. 908.)

The court also rejected an argument identical to our defendant's contention that the limitation on presentencing credits could not attach to credits earned prior to his arrest for a violent felony.  (*Brown*, *supra*, 52 Cal.App.5th at p. 909.)  Although it found some support for the defendant's position that the statute limiting presentencing credits "does not reach the earlier custody period attributable only to his cocaine possession offense." (*Ibid.*)  Such an argument was ultimately found to be "built on the untenable premise that

13.

*Reeves*, *supra*, 35 Cal.4th 765 implicitly disapproved *Baker*, *supra*, 144 Cal.App.4th 1320 and *Marichalar*, *supra*, 144 Cal.App.4th 1331." (*Ibid*.) The court declined to read *Reeves* in such a manner because the Supreme Court's republication cast serious doubt on any interpretation of *Reeves* that "would undermine the two appellate cases that confronted the precise issue before us almost 20 years ago." (*Ibid*.)

In the present case, defendant received a consecutive sentence on both nonviolent and violent felonies having served two separate incarceration periods of 747 days prior to any arrest for his violent felony offenses. At defendant's combined sentencing for his nonviolent and violent offenses, he was properly considered "any person who is convicted" of a violent felony such that the 15 percent limitation applied to the custody credits he was awarded. (§ 2933.1, subd. (a).) Thus, the present circumstances are inapposite from the postsentence credits at issue in *Reeves*. Defendant's attempt to require the trial court to "parse such a single, unitary period of presentence confinement into hypothetical, overlapping terms eligible to earn credit at different rates" was found by *Reeves* to have no support in the statutory language of section 2933.1. (*Reeves*, *supra*, 35 Cal.4th at p. 775.)

We find nothing in the language of section 2933.1, subdivision (c) suggesting that the particular presentence confinement at issue must be specifically attributable to the violent felony offense. The statute states only that "the maximum credit that may be earned against a period of [pre-sentence] confinement …, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)." (§ 2933.1, subd. (c).) Properly construed, that provision limits "a violent felon's conduct credits irrespective of whether or not all his or her offenses come within section 667.5." (*People v. Ramos*, *supra*, 50 Cal.App.4th at p. 817.)

In sum, we are not persuaded to depart from the well-accepted construction of section 2933.1, subdivision (c), that was adopted in *Ramos* and followed in many cases

thereafter. "Respecting our role as an intermediate appellate court, we believe the appropriate course is to follow existing precedent as reflected in *Baker*, *supra*, 144 Cal.App.4th 1320 and *Marichalar*, *supra*, 144 Cal.pp.4th 1331 leaving it to the Supreme Court to reexamine those decisions if it now believes they were in error." (*Brown*, *supra*, 52 Cal.App.5th at p. 909.) Moreover, applying that interpretation here comports with the legislative intent behind the statute: "to provide greater protection to the public from dangerous offenders," like defendant, "who might otherwise be paroled at an earlier date." (*People v. Garcia* (2004) 121 Cal.App.4th 271, 277.) Accordingly, the trial court did not err in restricting defendant's presentence conduct credit under section 2933.1, subdivision (c).

## II. Denial of *Pitchess* Motion

Before trial, defendant made a *Pitchess* motion requesting disclosure of the personnel records of Gonzalez and Pollock relevant to complaints for dishonesty and other misconduct. The trial court granted the motion for an in camera review, and after reviewing the records, the court found no records were required to be disclosed. We have reviewed the records and see no abuse of discretion.

A trial court's decision on a *Pitchess* motion is reviewed under an abuse of discretion standard. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.) The exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) We review the record for "materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) The record of the trial court's in camera hearing is sealed, and appellate counsel are not allowed to see it. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330.) Thus, on request, the appellate court must independently review the sealed record. (See *Prince*, at p. 1285.)

"A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045." (*Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 318.) "[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] … If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations [citation], 'the trial court should then disclose to the defendant "such information [that] is relevant to the subject matter involved in the pending litigation." ' " (*People v. Gaines* (2009) 46 Cal.4th 172, 179.)

We have reviewed the personnel records of Gonzales and Pollack, and we find no relevant information in them. We conclude the trial court did not abuse its discretion by deciding not to disclose any records.

## DISPOSITION

The matter is remanded with directions that the trial court recalculate defendant's custody credits, and subsequently prepare an amended abstract of judgment reflecting the recalculated credits and transmit it to the appropriate parties and entities. In all other respects, the judgment is affirmed.

16.